# UNITED STATES *v.* NOBLES

No. 74–634.   Argued April 23, 1975—Decided June 23, 1975

*Paul L. Friedman* argued the cause for the United States. With him on the briefs were *Solicitor General Bork, Acting Assistant Attorney General Keeney, Deputy Solicitor General Frey, Sidney M. Glazer,* and *Ivan Michael Schaeffer.*

*Nicholas R. Allis* argued the cause for respondent. With him on the brief was *John K. Van de Kamp.**

---

*Briefs of *amici curiae* urging affirmance were filed by *John J. Cleary* for the California Public Defenders Assn. et al., and by the Federal Public Defender of New Jersey.

Mr. Justice Powell delivered the opinion of the Court.

In a criminal trial, defense counsel sought to impeach the credibility of key prosecution witnesses by testimony of a defense investigator regarding statements previously obtained from the witnesses by the investigator. The question presented here is whether in these circumstances a federal trial court may compel the defense to reveal the relevant portions of the investigator's report for the prosecution's use in cross-examining him. The United States Court of Appeals for the Ninth Circuit concluded that it cannot. 501 F. 2d 146. We granted certiorari, 419 U. S. 1120 (1975), and now reverse.

## I

Respondent was tried and convicted on charges arising from an armed robbery of a federally insured bank. The only significant evidence linking him to the crime was the identification testimony of two witnesses, a bank teller and a salesman who was in the bank during the robbery.[1] Respondent offered an alibi but, as the Court of Appeals recognized, 501 F. 2d, at 150, his strongest defense centered around attempts to discredit these eyewitnesses. Defense efforts to impeach them gave rise to the events that led to this decision.

In the course of preparing respondent's defense, an investigator for the defense interviewed both witnesses and preserved the essence of those conversations in a written report. When the witnesses testified for the prosecution, respondent's counsel relied on the report in conducting their cross-examination. Counsel asked the bank

---

[1] The only other evidence introduced against respondent was a statement made at the time of arrest in which he denied that he was Robert Nobles and subsequently stated that he knew that the FBI had been looking for him.

teller whether he recalled having told the investigator that he had seen only the back of the man he identified as respondent. The witness replied that he did not remember making such a statement. He was allowed, despite defense counsel's initial objection, to refresh his recollection by referring to a portion of the investigator's report. The prosecutor also was allowed to see briefly the relevant portion of the report.[2] The witness thereafter testified that although the report indicated that he told the investigator he had seen only respondent's back, he in fact had seen more than that and continued to insist that respondent was the bank robber.

The other witness acknowledged on cross-examination that he too had spoken to the defense investigator. Respondent's counsel twice inquired whether he told the investigator that "all blacks looked alike" to him, and in each instance the witness denied having made such a statement. The prosecution again sought inspection of the relevant portion of the investigator's report, and respondent's counsel again objected. The court declined to order disclosure at that time, but ruled that it would be required if the investigator testified as to the witnesses' alleged statements from the witness stand.[3] The

---

[2] Counsel for the Government complained that the portion of the report produced at this time was illegible. The witness' testimony indicates, however, that he had no difficulty reading it.

[3] The essence of the District Court's order was as follows:

"[If the investigator] is allowed to testify it would be necessary that those portions of [the] investigative report which contain the statements of the impeached witness will have to be turned over to the prosecution; nothing else in that report.

.         .         .         .         .

"If he testifies in any way about impeaching statements made by either of the two witnesses, then it is the Court's view that the government is entitled to look at his report and only those portions of that report which contain the alleged impeaching statements . . . of the witnesses." App. 31.

court further advised that it would examine the investigator's report *in camera* and would excise all reference to matters not relevant to the precise statements at issue.

After the prosecution completed its case, respondent called the investigator as a defense witness. The court reiterated that a copy of the report, inspected and edited *in camera,* would have to be submitted to Government counsel at the completion of the investigator's impeachment testimony. When respondent's counsel stated that he did not intend to produce the report, the court ruled that the investigator would not be allowed to testify about his interviews with the witnesses.[4]

The Court of Appeals for the Ninth Circuit, while acknowledging that the trial court's ruling constituted a "very limited and seemingly judicious restriction," 501 F. 2d, at 151, nevertheless considered it reversible

---

[4] Athough the portion of the report containing the bank teller's alleged statement previously was revealed and marked for identification, it was not introduced into evidence. When the discussion of the investigator's testimony subsequently arose, counsel for the Government noted that he had only a limited opportunity to glance at the statement, and he then requested disclosure of that portion of the report as well as the statement purportedly made by the salesman.

As indicated above, the bank teller did not deny having made the statement recorded in the investigator's report. It is thus possible that the investigator's testimony on that point would not have constituted an impeachment of the statements of that witness within the contemplation of the court's order and would not have given rise to a duty of disclosure. Counsel did not pursue this point, however, and did not seek further clarification of the issue. Respondent does not, and in view of the failure to develop the issue at trial could not, urge this as a ground for reversal. Nor does respondent maintain that the initial disclosure of the bank teller's statement sufficed to satisfy the court's order. We therefore consider each of the two alleged statements in the report to be impeaching statements that would have been subject to disclosure if the investigator had testified about them.

error. Citing *United States* v. *Wright,* 160 U. S. App. D. C. 57, 68, 489 F. 2d 1181, 1192 (1973), the court found that the Fifth Amendment prohibited the disclosure condition imposed in this case. The court further held that Fed. Rule Crim. Proc. 16, while framed exclusively in terms of pretrial discovery, precluded prosecutorial discovery at trial as well. 501 F. 2d, at 157; accord, *United States* v. *Wright, supra,* at 66–67, 489 F. 2d, at 1190–1191. In each respect, we think the court erred.

## II

The dual aim of our criminal justice system is "that guilt shall not escape or innocence suffer," *Berger* v. *United States,* 295 U. S. 78, 88 (1935). To this end, we have placed our confidence in the adversary system, entrusting to it the primary responsibility for developing relevant facts on which a determination of guilt or innocence can be made. See *United States* v. *Nixon,* 418 U. S. 683, 709 (1974); *Williams* v. *Florida,* 399 U. S. 78, 82 (1970); *Elkins* v. *United States,* 364 U. S. 206, 234 (1960) (Frankfurter, J., dissenting).

While the adversary system depends primarily on the parties for the presentation and exploration of relevant facts, the judiciary is not limited to the role of a referee or supervisor. Its compulsory processes stand available to require the presentation of evidence in court or before a grand jury. *United States* v. *Nixon, supra; Kastigar* v. *United States,* 406 U. S. 441, 443–444 (1972); *Murphy* v. *Waterfront Comm'n,* 378 U. S. 52, 93–94 (1964) (WHITE, J., concurring). As we recently observed in *United States* v. *Nixon, supra,* at 709:

"We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both

fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense."

Decisions of this Court repeatedly have recognized the federal judiciary's inherent power to require the prosecution to produce the previously recorded statements of its witnesses so that the defense may get the full benefit of cross-examination and the truth-finding process may be enhanced. See, *e. g., Jencks* v. *United States,* 353 U. S. 657 (1957); [5] *Gordon* v. *United States,* 344 U. S. 414 (1953); *Goldman* v. *United States,* 316 U. S. 129 (1942); *Palermo* v. *United States,* 360 U. S. 343, 361 (1959) (BRENNAN, J., concurring in result). At issue here is whether, in a proper case, the prosecution can call upon that same power for production of witness statements that facilitate "full disclosure of all the [relevant] facts." *United States* v. *Nixon, supra,* at 709.

In this case, the defense proposed to call its investigator to impeach the identification testimony of the prosecution's eyewitnesses. It was evident from cross-examination that the investigator would testify that each witness' recollection of the appearance of the individual identified as respondent was considerably less clear at

---

[5] The discretion recognized by the Court in *Jencks* subsequently was circumscribed by Congress in the so-called Jencks Act, 18 U. S. C. § 3500. See generally *Palermo* v. *United States,* 360 U. S. 343 (1959).

an earlier time than it was at trial. It also appeared that the investigator and one witness differed even as to what the witness told him during the interview. The investigator's contemporaneous report might provide critical insight into the issues of credibility that the investigator's testimony would raise. It could assist the jury in determining the extent to which the investigator's testimony actually discredited the prosecution's witnesses. If, for example, the report failed to mention the purported statement of one witness that "all blacks looked alike," the jury might disregard the investigator's version altogether. On the other hand, if this statement appeared in the contemporaneously recorded report, it would tend strongly to corroborate the investigator's version of the interview and to diminish substantially the reliability of that witness' identification.[6]

It was therefore apparent to the trial judge that the investigator's report was highly relevant to the critical issue of credibility. In this context, production of the report might substantially enhance "the search for truth," *Williams* v. *Florida,* 399 U. S., at 82. We must determine whether compelling its production was precluded by some privilege available to the defense in the circumstances of this case.

---

[6] Rule 612 of the new Federal Rules of Evidence entitles an adverse party to inspect a writing relied on to refresh the recollection of a witness while testifying. The Rule also authorizes disclosure of writings relied on to refresh recollection before testifying if the court deems it necessary in the interests of justice. The party obtaining the writing thereafter can use it in cross-examining the witness and can introduce into evidence those portions that relate to the witness' testimony. As the Federal Rules of Evidence were not in effect at the time of respondent's trial, we have no occasion to consider them or their applicability to the situation here presented.

## III

### A

The Court of Appeals concluded that the Fifth Amendment renders criminal discovery "basically a one-way street." 501 F. 2d, at 154. Like many generalizations in constitutional law, this one is too broad. The relationship between the accused's Fifth Amendment rights and the prosecution's ability to discover materials at trial must be identified in a more discriminating manner.

The Fifth Amendment privilege against compulsory self-incrimination is an "intimate and personal one," which protects "a private inner sanctum of individual feeling and thought and proscribes state intrusion to extract self-condemnation." *Couch* v. *United States,* 409 U. S. 322, 327 (1973); see also *Bellis* v. *United States,* 417 U. S. 85, 90–91 (1974); *United States* v. *White,* 322 U. S. 694, 698 (1944). As we noted in *Couch, supra,* at 328, the "privilege is a *personal* privilege: it adheres basically to the person, not to information that may incriminate him." [7]

In this instance disclosure of the relevant portions of the defense investigator's report would not impinge on the fundamental values protected by the Fifth Amendment. The court's order was limited to statements

---

[7] "The purpose of the relevant part of the Fifth Amendment is to prevent compelled self-incrimination, not to protect private information. Testimony demanded of a witness may be very private indeed, but unless it is incriminating and protected by the Amendment or unless protected by one of the evidentiary privileges, it must be disclosed." *Maness* v. *Meyers,* 419 U. S. 449, 473–474 (1975) (WHITE, J., concurring in result). Moreover, the constitutional guarantee protects only against forced individual disclosure of a "testimonial or communicative nature," *Schmerber* v. *California,* 384 U. S. 757, 761 (1966); see also *United States* v. *Wade,* 388 U. S. 218, 222 (1967); *Gilbert* v. *California,* 388 U. S. 263 (1967).

allegedly made by third parties who were available as witnesses to both the prosecution and the defense. Respondent did not prepare the report, and there is no suggestion that the portions subject to the disclosure order reflected any information that he conveyed to the investigator. The fact that these statements of third parties were elicited by a defense investigator on respondent's behalf does not convert them into respondent's personal communications. Requiring their production from the investigator therefore would not in any sense compel respondent to be a witness against himself or extort communications from him.

We thus conclude that the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial. The Court of Appeals' reliance on this constitutional guarantee as a bar to the disclosure here ordered was misplaced.

## B

The Court of Appeals also held that Fed. Rule Crim. Proc. 16 deprived the trial court of the power to order disclosure of the relevant portions of the investigator's report.[8] Acknowledging that the Rule appears to control pretrial discovery only, the court nonetheless determined

---

[8] Rule 16 (c), which establishes the Government's reciprocal right of pretrial discovery, excepts "reports, memoranda, or other internal defense documents made by the defendant, or his attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant, or by government or defense witnesses, or by prospective government or defense witnesses, to the defendant, his agents or attorneys." That Rule therefore would not authorize pretrial discovery of the investigator's report. The proposed amendments to the Federal Rules of Criminal Procedure leave this subsection substantially unchanged. See Proposed Rule 16 of Criminal Procedure, 62 F. R. D. 271, 305–306 (1974).

that its reference to the Jencks Act, 18 U. S. C. § 3500, signaled an intention that Rule 16 should control trial practice as well. We do not agree.

Both the language and history of Rule 16 indicate that it addresses only pretrial discovery. Rule 16 (f) requires that a motion for discovery be filed "within 10 days after arraignment or . . . such reasonable later time as the court may permit," and further commands that it include all relief sought by the movant. When this provision is viewed in light of the Advisory Committee's admonition that it is designed to encourage promptness in filing and to enable the district court to avoid unnecessary delay or multiplication of motions, see Advisory Committee's Notes on Rule 16, 18 U. S. C. App., p. 4494, the pretrial focus of the Rule becomes apparent. The Government's right of discovery arises only after the defendant has successfully sought discovery under subsections (a)(2) or (b) and is confined to matters "which the defendant intends to produce at the trial." Fed. Rule Crim. Proc. 16 (c). This hardly suggests any intention that the Rule would limit the court's power to order production once trial has begun.[9] Finally, the Advisory Committee's Notes emphasize its pretrial character. Those notes repeatedly characterize the Rule as a provision governing pretrial disclosure, never once suggesting that it was intended to constrict a district court's

---

[9] Rule 16 (g) imposes a duty to notify opposing counsel or the court of the additional materials previously requested or inspected that are subject to discovery or inspection under the Rule, and it contemplates that this obligation will continue during trial. The obligation under Rule 16 (g) depends, however, on a previous request for or order of discovery. The fact that this provision may have some effect on the parties' conduct during trial does not convert the Rule into a general limitation on the court's inherent power to control evidentiary matters.

control over evidentiary questions arising at trial. 18 U. S. C. App., pp. 4493–4495.

The incorporation of the Jencks Act limitation on the pretrial right of discovery provided by Rule 16 does not express a contrary intent. It only restricts the defendant's right of pretrial discovery in a manner that reconciles that provision with the Jencks Act limitation on the trial court's discretion over evidentiary matters. It certainly does not convert Rule 16 into a general limitation on the trial court's broad discretion as to evidentiary questions at trial. Cf. *Giles* v. *Maryland,* 386 U. S. 66, 101 (1967) (Fortas, J., concurring in judgment).[10] We conclude, therefore, that Rule 16 imposes no constraint on the District Court's power to condition the impeachment testimony of respondent's witness on the production of the relevant portions of his investigative report. In extending the Rule into the trial context, the Court of Appeals erred.

## IV

Respondent contends further that the work-product doctrine exempts the investigator's report from disclosure at trial. While we agree that this doctrine applies to criminal litigation as well as civil, we find its protection unavailable in this case.

The work-product doctrine, recognized by this Court in *Hickman* v. *Taylor,* 329 U. S. 495 (1947), reflects the strong "public policy underlying the orderly prosecution

---

[10] We note also that the commentators who have considered Rule 16 have not suggested that it is directed to the court's control of evidentiary questions arising at trial. See, *e. g.,* Nakell, Criminal Discovery for the Defense and the Prosecution—the Developing Constitutional Considerations, 50 N. C. L. Rev. 437, 494–514 (1972); Rezneck, The New Federal Rules of Criminal Procedure, 54 Geo. L. J. 1276, 1279, 1282 n. 19 (1966); Note, Prosecutorial Discovery Under Proposed Rule 16, 85 Harv. L. Rev. 994 (1972).

and defense of legal claims." *Id.,* at 510; see also *id.,* at 514–515 (Jackson, J., concurring). As the Court there observed:

"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." *Id.,* at 510–511.

The Court therefore recognized a qualified privilege for

certain materials prepared by an attorney "acting for his client in anticipation of litigation." *Id.*, at 508.[11] See generally 4 J. Moore, Federal Practice ¶ 26.63 (2d ed. 1974); E. Cleary, McCormick on Evidence 204–209 (2d ed. 1972); Note, Developments in the Law—Discovery, 74 Harv. L. Rev. 940, 1027–1046 (1961).

Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.[12]

At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as

---

[11] As the Court recognized in *Hickman* v. *Taylor*, 329 U. S., at 508, the work-product doctrine is distinct from and broader than the attorney-client privilege.

[12] A number of state and federal decisions have recognized the role of the work-product doctrine in the criminal law, and have applied its protections to the files of the prosecution and the accused alike. See, *e. g., State* v. *Bowen*, 104 Ariz. 138, 449 P. 2d 603, cert. denied, 396 U. S. 912 (1969); *State ex rel. Polley* v. *Superior Ct. of Santa Cruz County*, 81 Ariz. 127, 302 P. 2d 263 (1956); *Peel* v. *State*, 154 So. 2d 910 (Fla. App. 1963); *In re Grand Jury Proceedings* (*Duffy* v. *United States*), 473 F. 2d 840 (CA8 1973); *In re Terkeltoub*, 256 F. Supp. 683 (SDNY 1966).

well as those prepared by the attorney himself.[13]  Moreover, the concerns reflected in the work-product doctrine do not disappear once trial has begun.  Disclosure of an attorney's efforts at trial, as surely as disclosure during pretrial discovery, could disrupt the orderly development and presentation of his case.  We need not, however, undertake here to delineate the scope of the doctrine at trial, for in this instance it is clear that the defense waived such right as may have existed to invoke its protections.

The privilege derived from the work-product doctrine is not absolute.  Like other qualified privileges, it may be waived.  Here respondent sought to adduce the testimony of the investigator and contrast his recollection of the contested statements with that of the prosecution's witnesses.  Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony.[14]  Respond-

---

[13] The sole issue in *Hickman* related to materials prepared by an attorney, and courts thereafter disagreed over whether the doctrine applied as well to materials prepared on his behalf.  See Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F. R. D. 487, 501 (1970) ; 4 J. Moore, Federal Practice ¶ 26.63 [8] (2d ed. 1974).  Necessarily, it must.  This view is reflected in the Federal Rules of Civil Procedure, see Rule 26 (b) (3), and in Rule 16 of the Criminal Rules as well, see Rules 16 (b) and (c) ; cf. E. Cleary, McCormick on Evidence 208 (2d ed. 1972).

[14] What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances.  Counsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses.  When so used, there normally is no waiver.  But where, as here, counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents.

ent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination. See, *e. g., Mc-Gautha* v. *California*, 402 U. S. 183, 215 (1971).[15]

## V

Finally, our examination of the record persuades us that the District Court properly exercised its discretion in this instance. The court authorized no general "fishing expedition" into the defense files or indeed even into the defense investigator's report. Cf. *United States* v. *Wright*, 160 U. S. App. D. C. 57, 489 F. 2d 1181 (1973). Rather, its considered ruling was quite limited in scope, opening to prosecution scrutiny only the portion of the report that related to the testimony the investigator would offer to discredit the witnesses' identification testimony. The court further afforded respondent the maxi-

---

[15] We cannot accept respondent's contention that the disclosure order violated his Sixth Amendment right to effective assistance of counsel. This claim is predicated on the assumption that disclosure of a defense investigator's notes in this and similar cases will compromise counsel's ability to investigate and prepare the defense case thoroughly. Respondent maintains that even the limited disclosure required in this case will impair the relationship of trust and confidence between client and attorney and will inhibit other members of the "defense team" from gathering information essential to the effective preparation of the case. See American Bar Association Project on Standards for Criminal Justice, The Defense Function § 3.1 (a) (App. Draft 1971). The short answer is that the disclosure order resulted from respondent's voluntary election to make testimonial use of his investigator's report. Moreover, apart from this waiver, we think that the concern voiced by respondent fails to recognize the limited and conditional nature of the court's order.

mum opportunity to assist in avoiding unwarranted disclosure or to exercise an informed choice to call for the investigator's testimony and thereby open his report to examination.

The court's preclusion sanction was an entirely proper method of assuring compliance with its order. Respondent's argument that this ruling deprived him of the Sixth Amendment rights to compulsory process and cross-examination misconceives the issue. The District Court did not bar the investigator's testimony. Cf. *Washington* v. *Texas,* 388 U. S. 14, 19 (1967). It merely prevented respondent from presenting to the jury a partial view of the credibility issue by adducing the investigator's testimony and thereafter refusing to disclose the contemporaneous report that might offer further critical insights. The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth. Deciding, as we do, that it was within the court's discretion to assure that the jury would hear the full testimony of the investigator rather than a truncated portion favorable to respondent, we think it would be artificial indeed to deprive the court of the power to effectuate that judgment. Nor do we find constitutional significance in the fact that the court in this instance was able to exclude the testimony in advance rather than receive it in evidence and thereafter charge the jury to disregard it when respondent's counsel refused, as he said he would, to produce the report.[16]

---

[16] Respondent additionally argues that certain statements by the prosecution and the District Court's exclusion of purported expert testimony justify reversal of the verdict, and that the Court of Appeals' decision should be affirmed on those grounds. The Court of

The judgment of the Court of Appeals for the Ninth Circuit is therefore

*Reversed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE WHITE, with whom MR. JUSTICE REHNQUIST joins, concurring.

I concur in the judgment and in Parts II, III, and V of the opinion of the Court. I write only because of misgivings about the meaning of Part IV of the opinion. The Court appears to have held in Part IV of its opinion only that whatever protection the defense investigator's notes of his interviews with witnesses might otherwise have had, that protection would have been lost when the investigator testified about those interviews. With this I agree also. It seems to me more sensible, however, to decide what protection these notes had in the first place before reaching the "waiver" issue. Accordingly, and because I do not believe that the work-product

---

Appeals rejected respondent's challenge to the exclusion of the testimony of the proffered expert, 501 F. 2d, at 150–151. Respondent did not present this issue or the question involving the challenged prosecutorial statements to this Court in a cross-petition for certiorari. Without questioning our jurisdiction to consider these alternative grounds for affirmance of the decision below, cf. *Langnes* v. *Green*, 282 U. S. 531, 538 (1931); *Dandridge* v. *Williams*, 397 U. S. 471, 475–476, n. 6 (1970); see generally Stern, When to Cross-Appeal or Cross-Petition—Certainty or Confusion?, 87 Harv. L. Rev. 763 (1974), we do not consider these contentions worthy of consideration. Each involves an issue that is committed to the trial court's discretion. In the absence of a strong suggestion of an abuse of that discretion or an indication that the issues are of sufficient general importance to justify the grant of certiorari we decline to entertain them.

doctrine of *Hickman* v. *Taylor*, 329 U. S. 495 (1947), can be extended wholesale from its historic role as a limitation on the nonevidentiary material which may be the subject of pretrial discovery to an unprecedented role as a limitation on the trial judge's power to compel production of evidentiary matter at trial, I add the following.

## I

Up until now the work-product doctrine of *Hickman* v. *Taylor*, *supra*, has been viewed almost exclusively as a limitation on the ability of a party to obtain pretrial discovery. It has not been viewed as a "limitation on the trial court's broad discretion as to evidentiary questions at trial." *Ante*, at 236. The problem discussed in *Hickman* v. *Taylor* arose precisely because, in addition to accelerating the time when a party could obtain evidentiary matter from his adversary,[1] the new Federal Rules of Civil Procedure greatly expanded the nature of the material subject to pretrial disclosure.[2]

---

[1] Under criminal discovery rules the *time* factor is not as great as might otherwise appear. Federal Rule Crim. Proc. 16 permits discovery through the time of trial; and under Fed. Rule Crim. Proc. 17 (c), evidentiary matter may be obtained pursuant to subpoena in advance of trial in the discretion of the trial judge.

[2] Prior to the Federal Rules, requests for witness statements were granted or denied on the basis of whether they were evidence and nonprivileged. In the main, production was denied, either because witness statements were not evidence (they are inadmissible hearsay until and unless the witness testifies); because a party is not entitled to advance knowledge of his adversary's case; or because the statements were made by the client or his agent to his attorney and thus covered by the attorney-client privilege. 4 J. Moore, Federal Practice ¶ 26.63 [3] (2d ed. 1974), and cases cited therein. The cases did not hold that witness statements were generally privileged, if they *were* evidentiary, and had no cause to decide whether a work-product notion should protect them from discovery, since they were nondiscoverable anyway under applicable discovery rules. But see *Walker* v. *Struthers*, 273 Ill. 387, 112 N. E. 961 (1916).

Under the Rules, a party was, for the first time, entitled to know in advance his opponent's evidence and was entitled to obtain from his opponent nonprivileged "information as to the existence or whereabouts of facts" relevant to a case even though the "information" was not itself evidentiary. *Hickman* v. *Taylor, supra,* at 501. Utilizing these Rules, the plaintiff in *Hickman* v. *Taylor* sought discovery of statements obtained by defense counsel from witnesses to the events relevant to the lawsuit, not for evidentiary use but only "to help *prepare* himself to examine witnesses and to make sure that he ha[d] overlooked nothing." 329 U. S., at 513 (emphasis added). In concluding that these statements should not be produced, the Court treated the matter entirely as one involving the plaintiff's entitlement to pretrial discovery under the new Federal Rules,[3] and carefully limited its opinion accordingly. The relevant Rule in the Court's view, Rule 26, on its face required production of the witness statements unless they were privileged. Nonetheless, the Court expressly stated that the request for witness statements was to be denied "not because the subject matter is privileged" (although noting that a work-product "privilege" applies in England, 329 U. S., at 510 n. 9) as that concept was used in the Rules, but because the request "falls outside the arena of *discovery.*" *Id.,* at 510 (emphasis added). The Court stated that it is essential that a lawyer work with a certain degree of privacy, and concluded that the effect of giving one lawyer's work (particularly his strategy, legal theories, and mental impressions) to another would have a "demoralizing" effect on the legal profession. The Court then noted that wit-

---

[3] Mr. Justice Jackson's concurrence is even more express on this point. It states: "[T]he question is simply whether such a demand is authorized by the rules relating to various aspects of 'discovery.'" 329 U. S., at 514.

ness statements might be admissible in evidence under some circumstances and might be usable to impeach or corroborate a witness. However, it concluded that in the case before it the plaintiff wanted the statements for preparation only and had shown no reason why he could not obtain everything he sought by doing his own work rather than utilizing that of his adversary.

The conclusion that the work product of a lawyer is not "privileged" made it much more difficult for the Court to support its result. Nothing *expressed* in the Rule supported its result, and the Court was forced to explain its decision by stating:

> "When Rule 26 and the other *discovery* rules were adopted, this Court and the members of the bar in general certainly did not believe or contemplate that all the files and mental processes of lawyers were *thereby* opened to the free scrutiny of their adversaries." *Id.,* at 514. (Emphasis added.)

I am left with the firm conviction that the Court avoided the easier route to its decision for a reason. To have held an attorney's work product to be "privileged" would have been to limit its use at trial as evidence in those cases in which the work product qualified as evidence, see Report of Proposed Amendments to Rules of Civil Procedure for the District Courts of the United States, 5 F. R. D. 433, 460 (1946), and, as Mr. Justice Jackson stated in his concurring opinion, a party is entitled to anything which is "evidence in his case." 329 U. S., at 515.[4]

---

[4] Mr. Justice Jackson also emphasized that the witness statements involved in *Hickman* v. *Taylor* were neither evidence nor privileged. *Id.,* at 516. Indeed, most of the material described by the Court as falling under the work-product umbrella does not qualify as evidence. A lawyer's mental impressions are almost never evidence and

Since *Hickman* v. *Taylor, supra,* Congress, the cases, and the commentators have uniformly continued to view the "work product" doctrine solely as a limitation on pretrial discovery and not as a qualified evidentiary privilege. In 1970, Congress became involved with the problem for the first time in the civil area. It did so solely by accepting a proposed amendment to Fed. Rule Civ. Proc. 26, which incorporated much of what the Court held in *Hickman* v. *Taylor, supra,* with respect to pretrial discovery. See Advisory Committee's explanatory statement, 28 U. S. C. App., p. 7778. In the criminal area, Congress has enacted 18 U. S. C. § 3500 and accepted Fed. Rule Crim. Proc. 16 (c). The former prevents pretrial discovery of witness statements from the Government; the latter prevents pretrial discovery of witness statements from the defense. Neither limits the power of the trial court to order production as evidence of prior statements of witnesses who have testified at trial.[5]

With the exception of materials of the type discussed in Part II, *infra,* research has uncovered no application of the work-product rule in the lower courts since *Hickman* to prevent production of evidence—impeaching or

out-of-court statements of witnesses are generally inadmissible hearsay. Such statements become evidence only when the witness testifies at trial, and are then usually impeachment evidence only. This case, of course, involves a situation in which the relevant witness was to testify and thus presents the question—not involved in *Hickman* v. *Taylor*—whether prior statements should be disclosed under the trial judge's power over evidentiary matters at trial.

[5] In n. 13 of its opinion, the Court cites Fed. Rule Crim. Proc. 16 (c), as containing the work-product rule. In n. 10, the Court correctly notes that Rule 16 (c) is not "directed to the court's control of evidentiary questions arising at trial." It seems to me that this supplies a better ground for the Court's decision than "waiver."

otherwise—at trial;[6] and there are several examples of cases rejecting such an approach.[7]

Similarly, the commentators have all treated the attorney work-product rule solely as a limitation on pretrial discovery, e. g., 4 J. Moore, Federal Practice ¶¶ 26.-63–26.64 (2d ed. 1974); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2026 (1970); 2A W. Barron & A. Holtzoff, Federal Practice and Procedure § 652 (Wright ed. 1961), and some have expressly stated that it does not apply to evidentiary matter. F. James, Civil Procedure 211 n. 13 (1965); 4 J. Moore, Federal Practice ¶ 16.23 [8.–4] (1963).

The reasons for largely confining the work-product rule to its role as a limitation on pretrial discovery are compelling. First of all, the injury to the factfinding

---

[6] The majority does cite one case, *In re Terkeltoub*, 256 F. Supp. 683 (SDNY 1966), in which the court referred to the work-product doctrine in preventing the Government from inquiring of a lawyer before the grand jury whether he had participated in suborning perjury of a prospective witness while preparing a criminal case for trial. In any event, a grand jury investigation is in some respects similar to pretrial discovery. Compare *In re Grand Jury Proceedings (Duffy v. United States)*, 473 F. 2d 840 (CA8 1973), with *Schwimmer v. United States*, 232 F. 2d 855 (CA8), cert. denied, 352 U. S. 833 (1956). The proper scope of inquiry is as broad, and it can be used as a way of preparing for the later criminal trial. There is for example a split of authority on whether the work-product rule applies to IRS tax investigations. Compare *United States v. McKay*, 372 F. 2d 174 (CA5 1967), with *United States v. Brown*, 478 F. 2d 1038 (CA7 1973).

[7] *Shaw v. Wuttke*, 28 Wis. 2d 448, 454–456, 137 N. W. 2d 649, 652–653 (1965); *State ex rel. State Highway Comm'n v. Steinkraus*, 76 N. M. 617, 620–621, 417 P. 2d 431, 432–433 (1966); *E. I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 24 F. R. D. 416 (Del. 1959); *United States v. Matles*, 154 F. Supp. 574 (EDNY 1957); *United States v. Sun Oil Co.*, 16 F. R. D. 533 (ED Pa. 1954); *United States v. Gates*, 35 F. R. D. 524 (Colo. 1964).

process is far greater where a rule keeps *evidence* from the factfinder than when it simply keeps advance disclosure of evidence from a party or keeps from him *leads* to evidence developed by his adversary and which he is just as well able to find by himself. In the main, where a party seeks to discover a statement made to an opposing party in order to *prepare* for trial, he can obtain the "substantial equivalent . . . by other means," Fed. Rule Civ. Proc. 26 (b)(3), *i. e.*, by interviewing the witness himself. A prior inconsistent statement in the possession of his adversary, however, when sought for evidentiary purposes—*i. e.*, to impeach the witness after he testifies— is for that purpose unique. By the same token, the danger perceived in *Hickman* that each party to a case will decline to prepare in the hopes of eventually using his adversary's preparation is absent when disclosure will take place only at trial. Indeed, it is very difficult to articulate a reason why statements on the same subject matter as a witness' testimony should not be turned over to an adversary after the witness has testified. The statement will either be consistent with the witness' testimony, in which case it will be useless and disclosure will be harmless; or it will be inconsistent and of unquestioned value to the jury. Any claim that disclosure of such a statement would lead the trial into collateral and confusing issues was rejected by this Court in *Jencks* v. *United States,* 353 U. S. 657 (1957), and by Congress in the legislation which followed.

The strong negative implication in *Hickman* v. *Taylor, supra,* that the work-product rule does not apply to evidentiary requests at trial became a holding in *Jencks* v. *United States, supra.* There a defendant in a criminal case sought production by the Government at trial of prior statements made by its witnesses on the same subject matter as their testimony. The Govern-

ment argued, *inter alia,* that production would violate the
" 'legitimate interest that each party—including the Government—has in safeguarding the privacy of its files.' "
353 U. S., at 670. The Court held against the Government. The Court said that to deny disclosure of prior
statements which might be used to impeach the witnesses
was to "deny the accused *evidence* relevant and material
to his defense," *id.,* at 667 (emphasis added). Also rejected as unrealistic was any rule which would require the
defendant to demonstrate the impeachment value of the
prior statements *before* disclosure,[8] and the Court held
that entitlement to disclosure for use in cross-examination is "established when the reports are shown to relate
to the testimony of the witness." *Id.,* at 669. Thus,
not only did the Court reject the notion that there was
a "work product" limitation on the trial judge's discretion to order production of evidentiary matter at trial,
but it was affirmatively held that prior statements of a
witness on the subject of his testimony are the kind of
evidentiary matter to which an adversary is entitled.

Indeed, even in the pretrial discovery area in which
the work-product rule does apply, work-product notions
have been thought insufficient to prevent discovery of
*evidentiary and impeachment* material. In *Hickman* v.
*Taylor,* 329 U. S., at 511, the Court stated:

> "We do not mean to say that all written materials
> obtained or prepared by an adversary's counsel with
> an eye toward litigation are necessarily free from
> discovery in all cases. Where relevant and non-

---

[8] The Court in *Jencks* quoted the language of Mr. Chief Justice
Marshall in *United States* v. *Burr,* 25 F. Cas. 187, 191 (Va. 1807):

" 'Now, if a paper be in possession of the opposite party, what
statement of its contents or applicability can be expected from the
person who claims its production, he not precisely knowing its contents?' " 353 U. S., at 668 n. 12.

privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be *admissible in evidence* or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of *impeachment* or *corroboration."* (Emphasis added.)

Mr. Justice Jackson, in concurring, was even more explicit on this point. See *supra,* at 245. Pursuant to this language, the lower courts have ordered *evidence* to be turned over pretrial even when it came into being as a result of the adversary's efforts in preparation for trial.[9] A member of a defense team who witnesses an out-of-court statement of someone who later testifies at trial in a contradictory fashion becomes at that moment a witness to a relevant and admissible event, and the cases cited above would dictate disclosure of any reports he

---

[9] *Cummings* v. *Bell Telephone Co. of Pennsylvania,* 47 F. R. D. 373 (ED Pa. 1968); *Marks* v. *Gas Service Co.,* 168 F. Supp. 487 (WD Mo. 1958); *Maginnis* v. *Westinghouse Electric Corp.,* 207 F. Supp. 739 (ED La. 1962); *Julius Hyman & Co.* v. *American Motorists Ins. Co.,* 17 F. R. D. 386 (Colo. 1955); *Parrett* v. *Ford Motor Co.,* 47 F. R. D. 22 (WD Mo. 1968); *Scuderi* v. *Boston Ins. Co.,* 34 F. R. D. 463, 468 (Del. 1964) (each involving a situation in which a member of a litigation team witnessed an event or scene in the course of preparing a case for trial and the court ordered disclosure of his report of the event); *Bourget* v. *Government Employees Ins. Co.,* 48 F. R. D. 29 (Conn. 1969); *McCullough Tool Co.* v. *Pan Geo Atlas Corp.,* 40 F. R. D. 490 (SD Tex. 1966); *O'Boyle* v. *Life Ins. Co. of North America,* 299 F. Supp. 704 (WD Mo. 1969). Cf. *LaRocca* v. *State Farm Mutual Automobile Ins. Co.,* 47 F. R. D. 278 (WD Pa. 1969), and *Kennedy* v. *Senyo,* 52 F. R. D. 34 (WD Pa. 1971) (in each of which the preparation for trial was the subject of the suit); see also *Natta* v. *Hogan,* 392 F. 2d 686, 693 (CA10 1968); F. James, Civil Procedure 211 (1965).

may have written about the event.[10]   Since prior statements are inadmissible hearsay until the witness testifies, there is no occasion for ordering reports of such statements produced as evidence *pretrial*.   However, some courts have ordered witness statements produced pretrial in the likelihood that they will *become* impeachment evidence.[11]   Moreover, where access to witnesses or to their information is unequal, discovery of their statements is often granted solely to help a party *prepare* for trial regardless of any eventual evidentiary value of the out-of-court statements.   See Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F. R. D., at 501.

Accordingly, it would appear that with one exception to be discussed below, the work-product notions of *Hickman* v. *Taylor, supra,* impose no restrictions on the trial judge's ordering production of evidentiary matter at trial; that these notions apply in only a very limited way, if at all, to a party's efforts to obtain *evidence* pretrial pursuant to available discovery devices; and that these notions supply only a qualified discovery immunity with respect to witness statements in any event.[12]

---

[10] The holding in *Jencks* v. *United States,* 353 U. S. 657 (1957), would put to rest any claim that such prior statement would be disclosable only if the adversary established its evidentiary value ahead of time by specific proof that it was inconsistent.

[11] *Vetter* v. *Lovett,* 44 F. R. D. 465 (WD Tex. 1968); *McDonald* v. *Prowdley,* 38 F. R. D. 1 (WD Mich. 1965); *Tannenbaum* v. *Walker,* 16 F. R. D. 570 (ED Pa. 1954); *Fulton* v. *Swift,* 43 F. R. D. 166 (Mont. 1967); *Republic Gear Co.* v. *Borg-Warner Corp.,* 381 F. 2d 551, 557–558 (CA2 1967) (*in camera* inspection). Cf. *Goosman* v. *A. Duie Pyle, Inc.,* 320 F. 2d 45 (CA4 1963).   For cases contra see 4 J. Moore, Federal Practice ¶ 26.64 [3] n. 14 (2d ed. 1974).

[12] The majority states:

"Moreover, the concerns reflected in the work-product doctrine do not disappear once trial has begun.   Disclosure of an attorney's

## II

In one of its aspects, the rule of *Hickman* v. *Taylor, supra,* has application to evidentiary requests at trial. Both the majority and the concurring opinions in *Hickman* v. *Taylor* were at pains to distinguish between production of statements written by the witness and in the possession of the lawyer, and those statements which were made orally by the witness and written down by the lawyer. Production and use of oral statements written down by the lawyer would create a substantial risk that the lawyer would have to testify.[13] The majority said that this would "make the attorney much less an officer

efforts at trial, as surely as disclosure during pretrial discovery, could disrupt the orderly development and presentation of his case. We need not, however, undertake here to delineate the scope of the doctrine at trial, for in this instance it is clear that the defense waived such right as may have existed to invoke its protections." *Ante,* at 239.

As noted above, the important question is not when the document in issue is created or even when it is to be produced. The important question is whether the document is sought for evidentiary or impeachment purposes or whether it is sought for preparation purposes only. Of course, a party should not be able to discover his opponent's legal memoranda or statements of witnesses not called whether his request is at trial or before trial. Insofar as such a request is made under the applicable discovery rules, it is within the rule of *Hickman* v. *Taylor* even though made at trial. Insofar as the request seeks to invoke the trial judge's discretion over evidentiary matters at trial, the rule of *Hickman* v. *Taylor* is unnecessary, since no one could ever suggest that legal memoranda or hearsay statements are evidence. If this is all the majority means by the above-quoted language, I agree.

[13] If the witness does not acknowledge making an inconsistent statement to the lawyer—even though the lawyer recorded it—the cross-examiner may not offer the document in evidence without at least calling the lawyer as a witness to authenticate the document and otherwise testify to the prior statement.

of the court and much more an ordinary witness." 329 U. S., at 513. Mr. Justice Jackson, in concurring, stated:

> "Every lawyer dislikes to take the witness stand and will do so only for grave reasons. This is partly because it is not his role; he is almost invariably a poor witness. But he steps out of professional character to do it. He regrets it; the profession discourages it. But the practice advocated here is one which would force him to be a witness, not as to what he has seen or done but as to other witnesses' stories, and not because he wants to do so but in self-defense." *Id.*, at 517.

The lower courts, too, have frowned on any practice under which an attorney who tries a case also testifies as a witness, and trial attorneys have been permitted to testify only in certain circumstances.[14]

The remarks of the Court in *Hickman* v. *Taylor, supra,* while made in the context of a request for pretrial discovery have application to the evidentiary use of lawyers' memoranda of witness interviews at trial. It is unnecessary, however, to decide in this case whether the policies against putting in issue the credibility of the lawyer who will sum up to the jury outweigh the jury's interest in obtaining all relevant information; and whether *Jencks* v. *United States, supra,* and 18 U. S. C.

---

[14] *United States* v. *Porter,* 139 U. S. App. D. C. 19, 429 F. 2d 203 (1970); *United States* v. *Fiorillo,* 376 F. 2d 180 (CA2 1967); *Gajewski* v. *United States,* 321 F. 2d 261 (CA8 1963), cert. den., 375 U. S. 968 (1964); *United States* v. *Newman,* 476 F. 2d 733 (CA3 1973); *Travelers Ins. Co.* v. *Dykes,* 395 F. 2d 747 (CA5 1968); *United States* v. *Alu,* 246 F. 2d 29 (CA2 1957); *United States* v. *Chiarella,* 184 F. 2d 903, modified on rehearing, 187 F. 2d 12 (CA2 1950), vacated as to one petitioner, 341 U. S. 946, cert. denied as to other petitioner *sub nom. Stancin* v. *United States,* 341 U. S. 956 (1951); *United States* v. *Clancy,* 276 F. 2d 617 (CA7 1960), rev'd on other grounds, 365 U. S. 312 (1961).

§ 3500 are to be viewed as expressing a preference for disclosure of all facts.[15]   In this case, the creator of the memorandum was not the trial lawyer but an investigator [16] and he was, in any event, to be called as a witness by the defense.   Accordingly, I would reverse the judgment below because, quite apart from waiver, the work-product rule of *Hickman* v. *Taylor, supra,* has no application to the request at trial for evidentiary and impeachment material made in this case.

---

[15] The cases have held records of witness statements made by prosecutors to be disclosable under 18 U. S. C. § 3500, *United States* v. *Hilbrich,* 341 F. 2d 555 (CA7), cert. den., 381 U. S. 941, reh. den., 382 U. S. 874 (1965), and 384 U. S. 1028 (1966); *United States* v. *Aviles,* 315 F. 2d 186 (CA2 1963); *Saunders* v. *United States,* 114 U. S. App. D. C. 345, 316 F. 2d 346 (1963); *United States* v. *Smaldone,* 484 F. 2d 311 (CA10 1973), cert. den., 415 U. S. 915 (1974).   Cf. *Canaday* v. *United States,* 354 F. 2d 849 (CA8 1966). In *State* v. *Bowen,* 104 Ariz. 138, 449 P. 2d 603 (1969), the court reached a contrary result under state law. .

[16] A conflict arose among lower federal courts over the question whether the work product of members of a litigation team other than the lawyer was protected from discovery by the rule of *Hickman* v. *Taylor, supra.*   Ghent, Development, Since Hickman v. Taylor, of Attorney's "Work Product" Doctrine, 35 A. L. R. 3d 438–440 (§§ 7 [a] and [b]) and 453–455 (§§ 15 [a] and [b]) (1971); Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F. R. D. 487, 501–502 (1970).   With respect to discovery in civil cases under Fed. Rule Civ. Proc. 26, the conflict was resolved in the 1970 amendments by affording protection to documents by a party's "representative," whether a lawyer or not.   Where the purpose of the rule protecting the work product is to remove the incentive a party might otherwise have to rely solely on his opponent's preparation, it is sensible to treat preparation by an attorney and an investigator alike. However, the policy against lawyers testifying applies only to the lawyer who tries the case.