**VELSICOL CHEMICAL CORPORATION, Petitioner-Appellant,**

v.

**Honorable James B. PARSONS, Chief Judge, United States District Court for the Northern District of Illinois, Respondent-Appellee.**

**Nos. 77-1433, 77-1434.**

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1977.

Decided July 29, 1977.

As Amended on Denial of Rehearing and Rehearing En Banc Sept. 26, 1977.

Vincent J. Fuller, John J. Buckley, Jr., Washington, D.C., Donald J. McLachlan, Chicago, Ill., for petitioner-appellant.

Samuel K. Skinner, U.S. Atty., Robert L. Herbst, Asst. U.S. Atty., Chicago, Ill., for respondent-appellee.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

In September 1975, the U.S. Attorney's office for the Northern District of Illinois initiated an investigation of Velsicol Chemical Corporation and several of its current and former employees and attorneys. The purpose of the investigation was to determine whether Velsicol and/or certain of its officers, employees, and attorneys withheld certain information from the United States Environmental Protection Agency which tended to show pesticides manufactured by Velsicol induced tumors and/or cancers in laboratory animals. Possible violations of 18 U.S.C. § 1001, 7 U.S.C. § 136d(a)(2) and 18 U.S.C. § 371 are within the scope of the investigation.

The key people involved in this appeal and mandamus action are Neil Mitchell, General Counsel of Velsicol; Bernant Lorant, an attorney in private practice and former employee of Velsicol; Harvey Gold, an employee of Velsicol; and three attorneys of the law firm of Sellers, Conner & Cuneo, Messrs. Robert L. Ackerly, Charles A. O'Connor and Joe G. Hollingsworth. Mitchell, Lorant and the Sellers law firm were jointly involved in the representation

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

of Velsicol in administrative proceedings before the Environmental Protection Agency. Gold has submitted an affidavit to the Environmental Protection Agency which stated in part that "[a]ll relevant reports and advisory committee proceedings have been submitted to the Environmental Protection Agency and its predecessor agencies". A particular focus of the investigation is Gold's affidavit and a legal memorandum prepared by Mitchell and Lorant with assistance of counsel from the Sellers firm. These two documents were filed by Velsicol in 1973 in opposition to the EPA's motion for a discovery subpoena in an administrative proceeding concerning two pesticides. The Government maintains that the representations embodied in those two documents appear to be false because some of the reports on the pesticides reposed in Velsicol's files at the time the legal memorandum and affidavits were filed. After being notified that it, along with several individuals, was under investigation, Velsicol retained Williams, Connolly & Califano (now Williams & Connolly) to represent the corporation in the grand jury investigation. The same firm also represented some of the individual subjects of the investigation, including Mitchell and Lorant. During the early stages of the investigation, government counsel, Assistant United States Attorney Thomas Mulroy, met with Messrs. David Povich and Richard Cooper of the Williams firm. At that meeting, Povich told Mulroy that Velsicol would not assert its attorney-client privilege as to any conversations between Velsicol employees and Mitchell and Lorant. Povich also told the Government that Velsicol would exercise the attorney-client privilege with respect to any communication between Velsicol and its outside counsel, including the Sellers and Williams firms.

From October 1975 to the present, Mitchell and Lorant have appeared before government counsel and the grand jury on a number of occasions and have testified as to numerous communications. Some of these communications have entailed remarks with lawyers from the Sellers firm. Specifically, Mitchell appeared at a sworn deposition in October, 1975, and before the Grand Jury in February 1977, disclosing conversations he had on several subjects with attorneys of the Sellers firm. The Government argues that a waiver evolved out of this program.

On 9 February 1977, grand jury subpoenae were issued directing three attorneys of the Sellers firm to give testimony and produce documents relating to their representation of Velsicol in the on-going EPA proceedings previously mentioned. Velsicol filed a motion to intervene in the grand jury proceeding and motions to quash and for a protective order. Velsicol argued that the subpoena-requested documents and testimony protected against disclosure by the attorney-client privilege and the work product rule.

Mr. Ackerly appeared before the grand jury and refused to answer ten questions propounded by the Government on the grounds that the subject of the inquiries was protected by the attorney-client privilege. A claim was also made that some of the subpoenaed documents were at least in part protected by the work product rule. The Government then brought Mr. Ackerly before the district court on a motion to compel testimony and production of documents. The court continued any hearing on the motions until 21 April 1977. On that date the court granted Velsicol's motion to intervene and the Government's motion to compel Ackerly's testimony. All of Velsicol's remaining motions were denied.

Velsicol promptly filed a Notice of Appeal, claiming possible irreparable injury. Velsicol also filed a Petition for a Writ of Mandamus and/or Prohibition and this court granted the petitioner-appellant an immediate temporary stay on 25 April 1977, and, on 13 May 1977, continued that stay until the final resolution of the appeal and mandamus action.

## APPEALABILITY OF THE DISTRICT COURT COMPELLING TESTIMONY AND PRODUCTION OF DOCUMENTS

A threshold determination to be made is whether the order of the district court is of

an appealable nature. Velsicol concedes that orders compelling production of documents and testimony pursuant to grand jury subpoenae duces tecum and ad testificandum are generally interlocutory, but argues that the situation here is governed by a limited category of cases where denial of immediate review would render impossible any review of individual claims. *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1917). Essentially, Velsicol stresses that appealability has been recognized where an intervenor may suffer irreparable injury because a third party (Ackerly) has been compelled to testify and produce. Basically the rationale behind the *Perlman* exception is that the second party (appealing party), who has not received the order or subpoena, should not be expected to rely on the recipient to risk contempt in order to exercise the intervenor-second party's rights. *See, United States v. Nixon,* 418 U.S. 683, 691, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

■ The Government acknowledges that this is a third party scenario similar to that recognized by the *Perlman* exception but reasons that the *Perlman* exception does not apply here because Ackerly is Velsicol's lawyer and that therefore he can be expected to protect Velsicol's rights. It is one thing, however, for a lawyer to invoke the privilege when called to testify (as Ackerly did on 13 April 1977) and quite another to expect an attorney to defy a court order directing him to testify. Ackerly has told the district court that he will comply with the order and will not risk contempt (Appendix of Appellant-Petitioner, p. 92). The privilege will not again be invoked by Ackerly, nor should he be expected to resist the court's order.[1]

At this juncture it is clear Velsicol cannot protect its rights in the absence of an appeal. Velsicol had standing to intervene and this is a situation properly covered by the *Perlman* exception. We have jurisdiction to entertain the appeal under 28 U.S.C. § 1291. *See, United States v. Nixon, supra; United States v. Ryan,* 402 U.S. 530, 536, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *Matter of Grand Jury Impaneled January 21, 1975,* 541 F.2d 373, 377 (CA 3 1976).

## THE ISSUE OF WAIVER BY VELSICOL

In granting the motion to compel, the district court concluded that there had been an intent on the part of Velsicol "to limit the disclosures" but "that that intent had been exceeded and exceeded under circumstances by which the corporation was bound" (Petitioner-Appellant Appendix, p. 98). Judge Parsons also determined that the waiver was "a general waiver" relating "primarily to subject matter" rather than merely to specific conversations (Appendix p. 85).

Velsicol makes a number of arguments as to why the district court ruling was erroneous. It is suggested that there was no corporate intent to waive and that Mitchell as a corporate officer did not possess the requisite authority to bind the corporation. Therefore, Velsicol concludes he was outside the scope of his authority.

■■ It is generally recognized that a corporation acts through its officers. In the instant suit, Mitchell held the office of "Vice-President-Legal" (Appellant's brief, p. 4) and as such was senior house counsel. While we believe that a corporate officer must have authority to bind the corporation, the authority of different corporate officers will inevitably vary as to the positions held. Despite the protestations of Velsicol that Mitchell lacked authority to waive the corporation's attorney-client privilege, we are not persuaded his authority was so limited. Although we do not intend to define the precise authority of every Velsicol corporate officer, we have no

---

1. Mr. Ackerly's decision to comply with the district court's order was not inconsistent with the Code of Professional Responsibility. DR4–101(C)(2) of the Disciplinary Rules provides as follows:

(C) A lawyer may reveal:

(1) Confidences or secrets with the consent of the clients affected, but only after a full disclosure of them.

(2) Confidences or secrets when permitted under Disciplinary Rules or *required by law or court order.* (Emphasis supplied.)

doubts that Mitchell was within the scope of his authority when he testified. The fact that the corporation has engaged outside counsel does not necessarily circumscribe or revoke the authority of house counsel.

Mitchell's status before the grand jury admittedly has several dimensions. As an individual, he is unquestionably a potential target. He also, however, is an agent of Velsicol and was employed as house counsel when he testified. Because the focus of the investigation is upon possible corporate misconduct within its own legal department, Velsicol is being represented by the Williams firm. While Mitchell's presence before the grand jury may be characterized as a client for purposes of determining attorney-client issues, vis-à-vis communications with outside counsel, he was nonetheless possessed of the office of house counsel of the corporation and as such was an agent of the client corporation with authority to waive the attorney-client privilege. Furthermore, as the Government has pointed out, Velsicol has never produced any corporate resolution or written document purporting to formalize its purported limited waiver of the privilege with regard to its own lawyers or outside counsel.

 Velsicol also reasons that the disclosures made by Mitchell were inadvertent because Velsicol did not intend to waive the privilege as to outside counsel. Appellant has cited several cases where courts have declined to find waivers where mistake or misapprehension was present. We do not find any indications, however, that Mitchell was operating under any misapprehension when he testified. Moreover, having concluded that Mitchell was an agent of the corporation with authority to waive the attorney-client privilege as to outside counsel, we are obligated to view his testimony as at least one manifestation of corporate intent. This is particularly true in this particular case where Mitchell, house counsel for Velsicol, was conferring with a Mr. Vincent Fuller (a member of Velsicol's outside counsel team from the Williams firm) during the course of his grand jury testimony in which the waiver occurred (Appendix E, p. 42).

Apparently Mitchell was consulting with Fuller to determine if he could answer particular questions before the grand jury (Appendix E, pp. 43–44). Fuller suggested at the hearing that Mitchell might have "violated the instructions given him by counsel for Velsicol" (Appendix E, p. 42).

Under these circumstances, we cannot accept Velsicol's thesis that Mitchell's testimony was inadvertent. Mitchell, an attorney himself, answered the questions propounded to him after consultation with outside counsel and Velsicol must accept the legal implications of that testimony. Moreover, the presence of Fuller at the grand jury questioning undermines Velsicol's contention that Mitchell was there in a merely noncorporate capacity. Having afforded Mitchell the benefit of outside counsel for his testimony, it does not seem reasonable that Velsicol should be allowed to disavow the content of that testimony. We have to accept the position that Mitchell was aware of the privilege involved and the surrounding circumstances. Accordingly, the relinquishment of the privilege embodied in his testimony cannot be characterized as inadvertent.

Appellant also maintains that Mitchell's disclosures to the grand jury were involuntary because they were compelled by a subpoena. Specifically, Velsicol asserts that "the grand jury was used to force Mitchell to make the disclosure" (Appellant's brief, p. 32). As pointed out above, however, Mitchell was in consultation with outside counsel during the course of his testimony. His situation is hardly analogous to Proposed Rule 512 of the Federal Rules of Evidence as suggested by the appellant. Mitchell was well aware of attorney-client privilege and certainly not "without opportunity to claim the privilege". Neither was he compelled to waive the privilege. Unlike Ackerly's posture, Mitchell was not under court order to testify about privileged communications.

 For reasons discussed above, we are of the opinion that Mitchell's testimony before the grand jury was of such a nature as to effect a waiver of Velsicol's attorney-

client privilege as to outside counsel. This being the case, the Government has the right to pursue the investigation with respect to communications between Velsicol and outside counsel as to the allegedly false memorandum and affidavit and to the carcinogenicity data in question. The district court properly granted the Government's motion to compel.

## THE WORK PRODUCT RULE AND THE SUBPOENAED DOCUMENTS

■ Appellant maintains that the district court's order also violates the work product rule with respect to the subpoenaed documents. For purposes discussed earlier, we have determined that the portion of the order involving the work product privilege is appealable. The remaining question is whether the work product privilege is applicable to the documents in question here.

As both parties have pointed out, the work product rule evolved out of civil litigation (*Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)) and has been made applicable to criminal litigation by both statute (Rule 16(b)(2), F.R.Cr.P.)[2] and court decisions (*United States v. Nobles,* 422 U.S. 225, 236, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). The doctrine has also been applied to grand jury proceedings. *In re Grand Jury Proceedings,* 473 F.2d 840 (CA 8 1974).

The application of the work product rule to grand jury investigations brings into conflict two vital policies: the public interest in the search for truth and the need to protect attorneys from unwarranted inquiries into their files and mental processes. The interests of society in both criminal and civil actions demand that "adequate safeguards assure the thorough preparation and presentation of each side of the case". *Nobles, supra,* 422 U.S. at 238, 95 S.Ct. at 2170.

The Government maintains that none of the subpoenaed documents were generated and prepared in connection with or anticipation of the grand jury inquiry because the Sellers firm did not and does not represent Velsicol in the criminal investigation. Appellant counters by arguing that the doctrine is not limited to prior litigation but also attaches in subsequent proceedings as well.

■ In *Duplan Corp. v. Moulinage at Retorderie de Chavanoz,* 487 F.2d 480 (CA 4 1973), a case relied upon by appellant, the Fourth Circuit held that materials prepared in prior civil patent suits and protected by the work product doctrine continued to enjoy such protection in a subsequent patent suit with a new party. We are dealing here, however, with a criminal grand jury investigation into documents prepared in earlier administrative proceedings. The documents prepared by the Sellers firm were not prepared in anticipation of a potential criminal litigation. Moreover, the focus of inquiry is to determine if their preparation was attended by misconduct. Under these circumstances, we believe that the Government has shown adequate grounds to acquire the documents. The criminal dimension of the instant suit makes it clear to us that the policy considerations in the *Duplan Corp.*[3] case cannot be analogized to cover this situation.

> Neither does the language of Rule 16(b)(2) warrant so broad a reading. We believe that "the case" mentioned in Rule 16(b)(2) should be confined to the instant criminal investigation and not extended to documents prepared by a different law firm in prior adminis-

**2.** Rule 16(b)(2) of the Federal Rules of Criminal Procedure provides as follows:

(2) Information Not Subject to Disclosure. Except as to scientific or medical reports, this subdivision does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents *made by the defendant, or his attorneys or agents in connection with the investigation or defense of the case,* or of statements made by the defendant, or by government or defense witnesses, or by pro-

spective government or defense witnesses, to the defendant, his agents or attorneys. (Emphasis supplied.)

**3.** The court, in *Duplan Corp.,* properly noted that the appellees there could have overcome the limitation of the work product rule by a showing of "substantial need" or "undue hardship" pursuant to F.R.C.P. 26(b)(3). The doctrine is not an absolute one and must be weighed against the exigencies of the situation.

trative proceedings. It is clear that documents prepared by the Williams firm are not being sought. Accordingly, we find no error in the ruling of the district court as it relates to the production of documents.

*THE MANDAMUS/PROHIBITION PETITION*

Having concluded that the district court order is appealable and having ruled upon the merits of the issues involved, we believe that the appellant's Petition for Writ of Mandamus and/or Prohibition no longer represents any justiciable issues. The Petition should be and hereby is dismissed on grounds of mootness.

For the reasons discussed above, the ruling of the district court is hereby AFFIRMED.