Rahim BEHNIA, Plaintiff,

v.

Barry SHAPIRO, et al., Defendants.

No. 96 C 7646.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 14, 1997.

Charles J. Barnhill, Miner, Barnhill & Galland, P.C., Madison, WI, for Plaintiff.

William George Miossi, Peter F. Donati, Winston & Strawn, Chicago, IL, Frederic J. Artwick, Patrick Scott Casey, John Todd Shapiro, Sonja L. Lengnick, Sidley & Austin, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are (1) plaintiff Rahim Behnia's ("Behnia") motion for *in camera* review of discovery document and for a protective order and (2) defendants Northwestern Medical Faculty Foundation, Dr. Barry Shapiro, and Dr. Scott Greene's (collectively "the Foundation defendants") motion to compel disclosure. For the reasons that follow, the court grants in part and denies in part Behnia's motion for a protective order and grants in part and denies in part the Foundation defendants' motion to compel disclosure.

## I. BACKGROUND

Behnia filed suit against the Foundation defendants and Northwestern University, alleging violations of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and section 1981 of the Civil Rights Act

of 1870. The court has subject matter jurisdiction over the case pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4) and 42 U.S.C. § 2000e–5(f).

Behnia and the Foundation defendants are currently before the court because they are embroiled in two discovery disputes. The first dispute is over whether Behnia's counsel must produce a particular document to the Foundation defendants. The second dispute is over whether the Foundation defendants may continue to question Behnia about the fee arrangement between him and his attorney.

## A. *Background on the document dispute*

On July 15, 1997, counsel for the Foundation defendants issued deposition subpoenas to seven nonparty witnesses. (Defendants' Motion to Compel Disclosure and Opposition to Plaintiff's Motion for *In Camera* Review and for a Protective Order (hereinafter "Def.'s Mot." at 2.)) On July 21, 1997, the Foundation defendants' counsel deposed six of the seven subpoenaed witnesses. (Def.'s Mot. at 2.) During the deposition of the third witness, Dr. Thomas Henthorn, the Foundation defendants' counsel learned that Behnia's lawyers had sent a packet of materials to the seven subpoenaed witnesses. (Def.'s Mot. at 2.)

The packet that Behnia's counsel sent to the subpoenaed witnesses included five documents. (Plaintiff's Motion for *In Camera* Review of Discovery Document and for a Protective Order (hereinafter "Pl.'s Mot.") at 3; Def.'s Mot. at 2–3.) Four of the five documents have been turned over in whole to the Foundation defendants' counsel. (Pl.'s Mot. at 3; Def.'s Mot. at 3.) The fifth document is a three-page memorandum prepared by Behnia's counsel which was intended "to prepare the witnesses and counsel's clients for their depositions." (Pl.'s Mot. at 3.) Behnia's counsel has turned over a redacted version of the memorandum to the Foundation defendants' counsel but refuses to turn over an unredacted version. (Def.'s Mot. at 4.)

Counsel for the Foundation defendants filed this motion to compel, requesting the court to compel disclosure of the unredacted copy of the memorandum and to continue the deposition subpoenas of the witnesses identified on the memorandum. Behnia's counsel filed this motion for *in camera* review of discovery document and for a protective order, requesting the court to enter a protective order allowing Behnia's counsel to withhold the document from production.

## B. *The fee arrangement dispute*

During the first part of Behnia's deposition, the Foundation defendants' counsel inquired into the fee arrangement between Behnia and his attorney. (Pl.'s Mot. at 2.) In a letter dated July 15, 1997, the Foundation defendants' counsel stated that when he resumes Behnia's deposition, counsel would again ask Behnia about the fee arrangement. (Ex. B to Pl.'s Mot.)

On July 29, 1997, counsel for Behnia and the Foundation defendants appeared in this court. (Ex. B to Plaintiff's Reply in Support of Motion for *In Camera* Review and for a Protective Order (hereinafter "Pl.'s Reply") at 2.) At that time, the Foundation defendants' counsel submitted the motion to compel disclosure of the fee arrangement. When asked by the court how the fee arrangement was relevant, counsel for the Foundation defendants responded, "I believe the relevance goes to ultimately witness bias. There is a group of doctors we believe who are supporting the plaintiff in this case financially, and they also have been identified as witnesses to some of the alleged actions that he has suffered." (*Id.*) The motion to compel disclosure also asserts that the fee arrangement is relevant because it might show witness bias. (Def.'s Mot. at 8.)

In response to the Foundation defendants' assertions, Behnia submitted the following documents to the court. First, Behnia attached to his reply brief an affidavit from his attorney, Charles Barnhill ("Barnhill"). (Affidavit of Charles Barnhill, Ex. F to Pl.'s Reply.) In his affidavit, Barnhill states that (1) he is the attorney who negotiated the fee arrangement with Behnia; (2) under the fee arrangement, Behnia is solely responsible for the fees and costs; (3) Barnhill has never accepted money from any other source for the payment of legal fees or costs in this

case; (4) Barnhill checked with his client to make sure that no other individuals had made financial contributions toward the payment of Barnhill's fee and learned that Behnia has alone paid the costs and expenses of this case. (*Id.*) Behnia also submitted an affidavit from John Belcaster ("Belcaster") in which Belcaster states that (1) he was the attorney who defended each of the five physician depositions taken by defense counsel on July 21, 1997 and (2) in those depositions, defense counsel only asked two witnesses, Dr. James Erickson ("Erickson") and Dr. Theodore Eisenman ("Eisenman"), whether they were helping pay Behnia's legal fees and expenses. (Affidavit of John F. Belcaster, Ex. E to Pl.'s Reply.) Both Erickson and Eisenman testified that they were not helping Behnia pay his legal fees. (Ex. C, D to Pl.'s Reply.)

The Foundation defendants have filed this motion to compel disclosure, requesting the court to compel Behnia to answer fully deposition inquiries concerning the nature of his fee arrangement with his attorney. Behnia has filed this motion for a protective order, requesting the court to prohibit the Foundation defendants from any further inquiry into the fee arrangement.

## II. *DISCUSSION*

### A. *The document dispute*

Behnia's motion requests that this court enter a protective order allowing Behnia's counsel to withhold the unredacted version of the three-page memorandum from production. Behnia claims the document is attorney work product which is privileged from discovery.

The Foundation defendants do not argue that the document does not qualify as work product. Rather, the Foundation defendants argue that Behnia's counsel waived any work-product protection "when they deliberately disclosed [the document] to non-party, non-client deponents for the obvious and stated purpose of preparing them to testify, and attempting to refresh their recollections and coordinate their answers for the benefit of the Plaintiff, Dr. Behnia." (Def.'s Mot. at 6.)

Embedded in the Foundation defendants' argument are two issues. The first issue is whether Behnia's attorneys waived any work-product protection by voluntarily disclosing the unredacted document to a third party. The second issue is whether the Foundation defendants are entitled to the unredacted document pursuant to Federal Rule of Evidence 612.

■ First the court considers whether Behnia's counsel waived any work-product protection by voluntarily disclosing the document to a third party. One of the individuals to whom the document was addressed was Dr. Thomas Henthorn. At his deposition, Dr. Henthorn testified that (1) he received the three-page memorandum; (2) he had not retained Barnhill or Belcaster; (3) he was not a client of Barnhill or Belcaster; (4) he was not paying Barnhill or Belcaster anything for their services; and (5) he does not have a claim against any of the Foundation defendants. (Ex. B to Def.'s Mot. at 67–68.) Thus, Behnia's attorneys voluntarily disclosed the document to a third party.

■ The issue is whether such disclosure results in waiver of the work-product protection. Protection under the work-product doctrine can be waived in certain circumstances. *See United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). One situation in which the work-product protection might be waived is when the document has been voluntarily disclosed to a third party. *Bramlette v. Hyundai Motor Co.*, No. 91 C 3635, 1993 WL 338980, at *3 (N.D.Ill. Sept. 1, 1993); *see also Williams v. Musser*, No. 94 C 4140, 1995 WL 27394, at *2 (N.D.Ill. Jan. 23, 1995); *In re Quantum Chem./Lummus Crest*, No. 90 C 778, 1992 WL 71782, at *3 (N.D.Ill. Apr. 1, 1992). Unlike the attorney-client privilege, mere disclosure to a third party is insufficient to waive work-product protection; rather, waiver of work-product protection occurs only if the disclosure to the third party "substantially increases the possibility for potential adversaries to obtain the information." *Bramlette*, 1993 WL 338980, at *3. The question is whether the particular disclosure was of such a nature as to enable an adversary to gain

access to the information. *Union Pacific Resources Co. v. Natural Gas Co. of America, No.* 90 C 5378, 1993 WL 278526, at *3 (N.D.Ill. July 20, 1993).

Considering the circumstances of the disclosure in this case, the court finds that Behnia's counsel waived any work-product protection of the three-page memorandum by disclosing the document to Dr. Henthorn. Behnia's counsel sent a copy of the document to Dr. Henthorn. Dr. Henthorn is simply a fact witness in this case. He is not a client of Behnia's counsel and he does not have a claim against the Foundation defendants. Further, the document itself does not indicate in any way that it is confidential. There is no notation that the document is confidential and there is no instruction to the recipients not to share the document with others. Thus, under these circumstances, there is no reasonable basis for Behnia's counsel to believe that Dr. Henthorn would not disclose the document to potential adversaries, including the Foundation defendants. Therefore, the court finds that Behnia's counsel has waived any work-product protection of the memorandum.[1] Accordingly, the court grants the Foundation defendants' motion to compel disclosure of the unredacted version of the three-page memorandum and denies Behnia's motion for a protective order allowing Behnia's counsel to withhold the document from discovery.

**B.** *The fee arrangement dispute*

Behnia requests the court to enter a protective order barring the Foundation defendants from further questioning Behnia about his fee arrangement with his attorney. Behnia argues that the fee arrangement is not relevant and, thus, not within the proper scope of discovery.

■ Federal Rule of Civil Procedure 26(b) governs the scope of and limits on discovery. Rule 26(b)(1) provides in pertinent part:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the

claim or defense of the party seeking discovery or to the claim or defense of any other party ... The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1). The test for relevancy in the discovery area is extremely broad. *E.g., AM Int'l Inc. v. Eastman Kodak Co.,* 100 F.R.D. 255, 257 (N.D.Ill.1981).

■ The Foundation defendants argue that Behnia's fee arrangement with his attorney is "highly relevant" because some of Behnia's witnesses might be helping Behnia pay for his legal fees and expenses which would be relevant to witness bias. (Def.'s Mot. at 8.) However, the Foundation defendants have not submitted to the court any evidence that might indicate that any witnesses might be helping Behnia pay his legal fees or expenses.

Behnia, on the other hand, has submitted to the court the Barnhill affidavit, the Belcaster affidavit, and the excerpts from the depositions of Erickson and Eisenman, all of which indicate that Behnia is solely responsible for paying Barnhill's fees. Barnhill's affidavit states that (1) under the fee agreement, Behnia is solely responsible for the legal fees and costs; (2) Barnhill has never accepted money from anyone other than Behnia for the payment of legal fees or costs in Behnia's case; and (3) Barnhill asked Behnia if anyone else was making financial contributions to help pay Barnhill's fee at which point Barnhill learned that Behnia alone has paid the costs and expenses of his case. (Affidavit of Charles Barnhill, Ex. F to Pl.'s Reply.) Belcaster's affidavit states that (1) he was the attorney who defended each of the five physician depositions taken by defense counsel on July 21, 1997 and (2) in those depositions, defense counsel only asked two witnesses, Erickson and Eisenman, whether they were helping pay Behnia's legal fees and expenses. (Affidavit of John F. Belcaster, Ex. E to Pl.'s Reply.) Both Erickson and

---

1. Because the court has found that Behnia's counsel has waived any work-product protection to the document at issue, the court need not consider whether the Foundation defendants are entitled to the document pursuant to Federal Rule of Evidence 612.

Eisenman testified at a deposition that they were not helping Behnia pay his legal fees. (Ex. C, D to Pl.'s Reply.)

In an attempt to argue that the fee arrangement between Behnia and his attorney is relevant and subject to discovery, the Foundation defendants cite two cases, *In re Grand Jury Proceeding* and *Burton v. American Reserve Corp.* In *In re Grand Jury Proceeding,* the government was attempting to discover the identity of an unknown third party who had paid an attorney to represent a criminal defendant in a conspiracy-narcotics trial. The fee-payer's identity was relevant because the fee-payer was also involved in the conspiracy. *In re Grand Jury Proceeding,* 898 F.2d 565, 566 (7th Cir. 1990). In *Burton,* the defense counsel in a class action was attempting to discover the fee arrangements between the named plaintiffs and their attorneys. The court found that the fee arrangements were "relevant to the ability of the named plaintiffs to protect the interest of the potential class members and hence are a proper subject for discovery." *Burton v. American Reserve Corp.,* Nos. 79 C 4767, 80 C 6251, 81 C 1475, 1985 WL 2598, at *3 (N.D.Ill. Sept. 18, 1985).

Neither *In re Grand Jury Proceeding* nor *Burton* stand for the proposition that the fee arrangement between a plaintiff and his attorney is always relevant. The arrangement was relevant in *In re Grand Jury Proceeding* because it went to the identity of a potential criminal defendant. In *Burton,* the fee arrangement was relevant to the issue of whether the named plaintiffs could protect the interests of the absent class members. Not only do neither of those situations exist in the case at bar, neither of those situations are even somewhat analogous.

Thus, considering the above, the court finds that the fee arrangement between Behnia and his attorney is not relevant and, thus, is outside the scope of discovery. The Foundation defendants have failed to show the court any basis for their belief that some of Behnia's witnesses might be helping Behnia pay his legal fees. In contrast, Behnia has given the court reason to believe that only Behnia is responsible for his legal fees and expenses. Thus, the court denies the Foun-

dation defendants' motion to compel disclosure of the fee arrangement and grants Behnia's motion for a protective order barring defendants from further questioning Behnia about the fee arrangement between him and his attorney.

### C. *Fees and expenses under Federal Rule of Civil Procedure 37(a)(4)*

Both parties have requested that the court award them their fees and costs in bringing their motion pursuant to Federal Rule of Civil Procedure 37(a)(4). (Def.'s Mot. at 9; Pl.'s Reply at 8–9.) Federal Rule of Civil Procedure 37(a)(4)(C) provides:

> If the motion is granted in part and denied in part, the court may enter any protective order authorized under Rule 26(c) and may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

FED. R. CIV. P. 37(a)(4)(C).

This court finds that the just solution is to have both parties pay their own legal fees and expenses. Accordingly, the court denies both parties' request to have the court award them their fees and costs in bringing their motion.

### III. *CONCLUSION*

For the foregoing reasons, the court grants in part and denies in part plaintiff Rahim Behnia's motion for a protective order and grants in part and denies in part defendants Northwestern Medical Faculty Foundation, Dr. Barry Shapiro, and Dr. Scott Greene's motion to compel disclosure. Specifically, the court enters the following orders:

1. Behnia's counsel is ordered to turn over to counsel for the Foundation defendants the unredacted version of the three-page memorandum.

2. The subpoenas issued to the deponents identified on the three-page memorandum are continued only for the specific purposes that counsel for the Foundation defendants may ask those deponents questions relating to the three-page memorandum.

3. The Foundation defendants are barred from further attempts to depose or otherwise question Behnia about the fee arrangement between Behnia and his attorney.

4. The court denies both parties requests for payment of legal fees and expenses pursuant to Federal Rule of Civil Procedure 37(a)(4).