William B. **BLANCHARD**, on behalf of himself and all others who sold shares of EdgeMark Financial Corporation common stock on or after April 1, 1993 and on or before November 1, 1993, Plaintiffs,

v.

EdgeMARK FINANCIAL CORPORA-TION, Roger A. Anderson, Charles A. Bruning, Doe Group I, Doe Group II and Old Kent Financial Corporation, Defendants.

No. 94 C 1890.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 18, 2000.

Reuben L. Hedlund, Stephen C. Hackney, Hedlund, Hanley & John, Chicago, IL, for Plaintiff.

Paul E. Freehling, Victoria P. Hallock, D'Ancona & Pflaum, Chicago, IL, William K. Holmes, Molly E. McFarlane, Warner, Norgross & Judd, Grand Rapids, MI, for Defendants.

## MEMORANDUM OPINION AND ORDER

ASHMAN, United States Magistrate Judge.

Presently before the Court are the following motions filed by Plaintiff: (1) Motion to Compel Production of Documents Transmitted to David Olson of Donaldson, Lufkin & Jenrette [311–1]; (2) Motion to Compel Production of Documents for Which Defendants Have Failed to Establish the Attorney–Client Privilege [310–1]; (3) Motion to Compel Production of Documents Relating to Treatment of EdgeMark Option Holders [309–1]; and (4) Motion to Compel Defendants to Produce Documents Relating to the Beale Settlement and For Reconsideration of This Court's Ruling on the Motion to Quash the Subpoena to Attorney Gravelyn [312–1, 312–2]. Defendants resist these motions on the merits, but also contend that they should be denied as untimely. This contention is addressed first, followed by an analysis of each motion. This Court assumes familiarity with the background of this case.

### I. The Motions To Compel Shall Be Heard

█ Defendants argue generally that all of the present motions are untimely because they were filed after the close of discovery. Oral discovery was closed on November 22, 1999, and these motions were filed a month

later. Defendants rely on *Koerts v. MCI Telecommunications, Corp.*, 1996 WL 312078 (N.D.Ill.1996), and *C.R. Bard, Inc. v. M3 Sys., Inc.*, 1994 WL 386819 (N.D.Ill.1994), but in those cases, the party seeking to compel after the close of discovery offered no persuasive justification for the untimely motion. Here, in the month following the close of oral discovery, Plaintiff's counsel worked diligently to complete an aggressive discovery schedule, including the taking of final depositions, briefed and argued their motion to amend the class period, attempted 12(K) conferences, and drafted the present motions. Defendants have offered no persuasive reason to doubt these explanations, so this Court excuses Plaintiff's belated filing of the motions. *See Bullen v. Thanasouras*, No. 92 C 1796, 1993 WL 23767, at *2 (N.D.Ill. Feb.2, 1993) (Gottschall, J.) (granting motion to compel filed two weeks after discovery cutoff).

## II. *Plaintiff's Motion To Compel Production of Documents Transmitted To David Olson of Donaldson, Lufkin & Jenrette*

Plaintiff seeks documents identified in Defendants' privilege logs that were sent to David Olson of Donaldson, Lufkin & Jenrette ("DLJ"). David Olson was EdgeMark's investment banker in connection with its merger with Old Kent. Defendants resist producing these documents claiming that they are protected from disclosure by the attorney-client privilege and the work-product doctrine.

The Seventh Circuit has long embraced the articulation of the attorney-client privilege as set forth by Dean Wigmore: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. 8 JOHN HENRY WIGMORE, EVIDENCE IN TRIALSAT COMMON LAW, § 2292 (1961); *see also United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir.1997). The privilege is construed narrowly and the party asserting it has the burden of establishing all of its essential elements. *See id.; see also United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992). Generally, the voluntary disclosure of privileged attorney-client communications constitutes a waiver of the privilege as to all other such communications dealing with the same subject matter. *See Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126 (7th Cir.1997); *Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir.1989).

Plaintiff argues that (1) the documents are not privileged because they reveal communications for the purpose of obtaining financial, and not legal, advice; and (2) even if they are privileged, by disclosing communications between EdgeMark and Mr. Olson, Defendants have waived the privilege as to all other documents pertaining to the same subject matter.

Defendants have withheld seven categories of documents, six on the grounds of attorney-client privilege. According to the privilege log attached as Exhibit C to Plaintiff's motion, the majority of documents involve communications between EdgeMark (or its counsel) and Old Kent (or its counsel) with copies to David Olson of DLJ. We assume without deciding that the documents contain privileged communications. EdgeMark's transmissions to a third party (*i.e.*, David Olson), Plaintiff argues, is inconsistent with the assertion of a privilege, and it is therefore destroyed. Defendants contend that after Mr. Hedlund (counsel for Plaintiff) allegedly threatened to sue EdgeMark, EdgeMark and DLJ's interests became "inextricably linked" because the threatened litigation might have jeopardized the merger, and therefore the privilege is still intact under the common-interest rule.

The general rule is "[a]ny voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client confidential relationship and thus waives the privilege." *Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir. 1989). A narrow exception to this rule, identified in *In re Grand Jury*, 106 F.R.D. 255, 258 (D.N.H.1985), may exist where the disclosure to the third party is for the purpose of assisting the attorney in rendering legal advice. *See also In re Consolidated Litig.*

*Concerning Int'l Harvester's Disposition of Wis. Steel,* 666 F.Supp. 1148, 1156–57 (N.D.Ill.1987). Here, the transmissions to Mr. Olson were not made for the purpose of assisting EdgeMark counsel's rendering of legal advice because the threatened litigation did not implicate any *legal* interest of DLJ, only its financial interest. Therefore, assuming that all the communications identified in Exhibit C are privileged, the privilege was waived by their transmission to a third party, unless the common-interest rule applies.

■ Defendants urge the application of the "joint-defense" doctrine (now more commonly identified as the "common-interest" rule), which effectively extends the scope of the privilege to communications made in the course of an ongoing enterprise and intended to further the enterprise. *See Evans,* 113 F.3d at 1467. The common-interest rule protects from disclosure communications between one party and an attorney for another party "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Id.* The common interest must be a legal one, not commercial or financial. *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 447 (S.D.N.Y.1995).

■ Defendants have not demonstrated that DLJ's legal interest in the threatened EdgeMark litigation was anything more than peripheral. DLJ is not a party to this lawsuit, there is no evidence that it was called upon to assist in the defense of this case or that there was otherwise a joint, concerted effort by EdgeMark and DLJ to advance a common legal enterprise. The only potential impact the threatened litigation had on DLJ was purely financial. Defendants have not shown that DLJ's legal interests were threatened in a meaningful way and so therefore the common-interest rule does not apply here.

Accordingly, Documents # 30, 2626–2630, and 6441–6475 identified in Exhibit C of Plaintiff's motion must be produced as Defendants resisted production of these documents on the grounds of privilege only. As to the other documents, Defendants have also invoked the work-product doctrine, which requires additional discussion.

■ The work-product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1974). It protects the work of an attorney from encroachment by opposing counsel. *See Binks Mfg. Co. v. National Presto Indus.,* 709 F.2d 1109, 1118 (7th Cir. 1983). The threshold determination in a case involving a claim of work-product privilege is whether the material sought to be protected was prepared "in anticipation of litigation." *Id.; see also* FED. R. CIV. P. 26(b)(3). To establish work-product protection for a document, the discovery opponent must show that "the primary motivating purpose behind the creation of a document ... must be to aid in possible future litigation." *Id.* at 1119. The documents must have been prepared because of the prospect of litigation. *See id.* at 1120. The communication must be made as part of the adversary process. *See Dawson v. New York Life Ins. Co.,* 901 F.Supp. 1362, 1368 (N.D.Ill.1995).

■ A waiver of the work-product protection can occur where the protected communications are disclosed in a manner which "substantially increases the opportunity for potential adversaries to obtain the information." *See Behnia v. Shapiro,* 176 F.R.D. 277, 279 (N.D.Ill.1997); *see also* 8 CHARLES A. WRIGHT & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL, § 2024, at 210 (1970). The question is whether the particular disclosure was of such a nature as to enable an adversary to gain access to the information. *See Behnia,* at 279–80. Whereas disclosure of a privileged communication usually results in a subject-matter waiver of the attorney-client privilege, the same does not necessarily apply to the work-product doctrine. *See* 8 WRIGHT & MARCUS, § 2024 at 210 (1970).

■ With regard to the documents transmitted to Mr. Olson, to the extent that they are protected by the work-product doctrine, the existence of a confidentiality agreement between Mr. Olson and EdgeMark militates against a finding of a waiver. The confidentiality agreement is evidence that EdgeMark took steps to ensure that its work product did not land in the hands of its adversaries.

**238**

Therefore, EdgeMark did not waive work-product protection as to Documents # 33 and 4568–4572 as identified in Exhibit C of Plaintiff's motion, *assuming* that these documents are protected by the work-product doctrine in the first instance. Accordingly, the Court will conduct an *in camera* inspection of these documents to determine whether they are protected by the work-product doctrine.

As for Document 17037–17040, this is a document prepared by Charles Bruning, a non-attorney, "regarding meeting on 1/4/94 between Pope–Ballard and Hedlund and Glick." An *in camera* inspection of this document is necessary to determine if it is protected by the work-product doctrine.

 Finally, Document 300001 is a cover letter sent by Robin Slas, an employee and non-attorney of EdgeMark, to Daniel Gravelyn, an attorney, with attachments containing all DLJ correspondence requested by Attorney Gravelyn. Plaintiffs seek not the letter itself, but rather the attachments, claiming that Defendants have not shown that any of the transmitted information is privileged. Defendants argue that the attachments are privileged because they were requested by an attorney in connection with the rendering of legal advice. This Court cannot agree with this contention. Documents which are otherwise unprivileged do not become privileged simply because an attorney requests them. Therefore, because Defendants have made no showing that the attachments are privileged or covered by the work-product doctrine, they must produce them.[1] Defendants do not have to produce the cover letter itself as Plaintiff does not seek its production.

In summary, Documents # 30, 2626–2630, and 6441–6475, and the attachments to Document # 3 00001, but not the cover letter, must be produced. Documents # 33, 4568–4572, and 17037–17040 must be made available for an *in camera* inspection to determine whether they are protected by the work-product doctrine.

## III. *Plaintiff's Motion To Compel Production of Documents For Which Defendants Have Failed To Establish the Attorney–Client Privilege*

Defendants resist production of the documents identified in Exhibits B–D of Plaintiff's motion on the grounds that they are not relevant to this litigation and that they are privileged, though Defendants acknowledge that the descriptions contained in their privilege logs may need to be supplemented.

The following documents are privileged based on the descriptions contained in the privilege logs and based on Defendants' assertions in their response brief:

Documents # 11993–71 and # 11993–72 contain redactions of legal advice conveyed to Old Kent by its attorneys and are therefore protected by the attorney-client privilege and the work-product doctrine.

Document # 17815–17856 is a legal memorandum written by Old Kent's attorneys which analyzes the state-securities laws and their requirements in connection with the merger. This is also not discoverable.

According to Defendants, document # 11993–8 contains redactions of minutes of a board of directors meeting at which Old Kent's attorneys rendered legal advice regarding the pending litigation. Obviously, an attorney's presence at a corporate board meeting does not necessarily protect the entire minutes of the meeting from disclosure, but here apparently Defendants have refused to produce only those portions of the minutes that reflect legal advice. Therefore, those portions of the minutes which do not reflect such legal advice are not privileged.

Document # 4450–4453 is a letter from the Commissioner of Banks and Trust Companies to Mr. Hansen, an attorney for Old Kent, which contains handwritten comments by Mr. Hansen. These handwritten comments were made after Mr. Hansen received the letter, and therefore his comments were not transmitted to a third party. Mr. Hansen's redacted comments are therefore privileged.

1. Defendants asserted at oral argument that there were no attachments to the cover letter. If that is so, Defendants shall state in a declaration that no such attachments exist.

As for Defendants objections to the production of attorneys' drafts of closing documents, the Court finds that they are reasonably within the scope of Plaintiff's Request No. 10, which sought "all documents relating to attempts to sell, merge, or consolidate EdgeMark of any part of it, from January 1, 1988 through December 31, 1993." Just because the withheld documents post-date 1993 does not mean that they do not "relate" to an attempt to merge EdgeMark at a date prior.

■ As previously emphasized, the party claiming a privilege bears the burden of demonstrating that the withheld communications are protected from disclosure. Plaintiff argues that Defendants have not met this burden as to the following categories of documents: (1) documents lacking a sender or recipient or both; and (2) documents that neither list an attorney as a sender or recipient nor are described as reflecting legal advice. If neither Defendants' privilege log nor Defendants' briefs sufficiently describes the nature of the documents so as to enable this Court to assess the applicability of the privilege, Defendants have failed to carry their burden, and the attorney-client privilege cannot protect these documents from discovery. *See, e.g., ConAgra v. Arkwright Mutual Ins. Co.*, 32 F.Supp.2d 1015, 1018 (N.D.Ill.1999). The same applies to documents as to which the work-product doctrine is raised. *See Christman v. Brauvin Realty Advisors, Inc.*, 185 F.R.D. 251, 258 (N.D.Ill.1999).

The privilege logs contain far too little information to permit this Court to ascertain whether a privilege attaches. Defendants concede this deficiency, allowing that they may need to provide more detailed information. Surprisingly, despite that concession, they failed to provide that "more detailed" information in their briefs. (Defs.' Resp., at 7). Therefore, because Defendants have failed to carry their burden of showing that the documents are protected, neither the attorney-client privilege nor work-product doctrine can protect them from discovery, and they must be produced.[2]

In summary, Documents # 11993–71, 11993–72, 17815–17856, the redacted portions of # 11993–8, and # 4450–4453 are privileged and are not discoverable. The remaining documents identified in Exhibits B and C must be produced.

## IV. *Plaintiff's Motion To Compel Production of Documents Relating To Treatment of EdgeMark Option Holders*

■ Plaintiff seeks to compel the production of all documents identified in Exhibits C and D of its motion. Plaintiff contends that these documents relating to the treatment of EdgeMark option holders are relevant to issues in this case for two reasons: (1) EdgeMark gave Mr. Bruning options to purchase EdgeMark stock as an incentive for him to convince shareholders of the good investment value of the bank; and (2) that Mr. Bruning would be given options in EdgeMark only if the sale went through is relevant to show that Mr. Bruning had an incentive to withhold disclosure of the fact of the planned acquisition and to maintain strict control over the acquisition process. Defendants resist production of documents pertaining to Edge-Mark option holders arguing that (1) they are not relevant to any issue in this lawsuit, (2) that they are not responsive to Plaintiff's requests numbers 1, 9, or 26, and (3) they are privileged.

With regard to relevance, that Mr. Bruning was afforded an option to purchase Edge-Mark stock if the sale went through is relevant to the scienter element of securities-fraud liability because it explains what might have motivated his alleged intent to deceive the shareholders. It is also relevant to the materiality element. A reasonable investor might have wanted to know before making an investment decision that Mr. Bruning was offered EdgeMark stock options. Therefore, Bruning's options in EdgeMark stock are relevant to the securities fraud allegations.

As for responsiveness, options to purchase stock may not fall within the literal scope of Plaintiff's requests, but they do fall well within the spirit of those requests. Given the broad discovery rules favored by the Federal Rules of Civil Procedure, and because an option to purchase stock does at least "re-

---

2. This is not inconsistent with the Court's earlier ruling that the documents transmitted to Mr. Olson must be made available for *in camera* inspection. Those documents identified both a sender and a recipient, at least one of whom was an attorney.

late" to a purchase of stock, the documents are responsive to one or more of Plaintiff's requests.

 Finally, Plaintiff argues that the documents sought are not privileged. The documents identified in Exhibit C are communications between (1) Old Kent's attorney (Mr. Jennings) and Mr. Bruning's attorney (Mr. Sullivan) with copy to Mr. Bruning, President and CEO of EdgeMark (Document #1669–1678); (2) Old Kent's attorney (Mr. Lewis) and Mr. Bruning (Document #4025–4026); and (3) Mr. Bruning's attorney (Mr. Sullivan) and Old Kent's attorney (Mr. Lewis) with copy to Mr. Bruning (Document #4276). The first two documents identified in Exhibit C are not privileged because they do not involve communications between a client and his lawyer. Document #4276 lost its privileged status by Mr. Sullivan's disclosure of the communication to a third party, Old Kent's attorney Mr. Lewis. Therefore, all of the documents identified in Exhibit C must be produced.

Next, Plaintiff argues that Defendants cannot assert the attorney-client privilege as to the documents identified in Exhibit D because (1) the documents relate to the giving of business and not legal advice, (2) the privilege log contains descriptions too vague to determine whether a privilege should attach, and (3) Defendants have waived any privilege by producing other privileged documents on the same subject matter.

Addressing the issue of waiver first, the privilege has not been waived by Edge-Mark's production of Exhibits G–J. Exhibit G does not refer to legal advice. Exhibit H was authored by an unknown individual. Plaintiff can only state that he "believes" (Pl.'s Mot., at 7), it was prepared by Old Kent's attorneys. Exhibit I is not privileged because it is a communication between Old Kent's counsel and Mr. Bruning's counsel. And Exhibit J, like Exhibit G, does not refer to legal advice. Therefore, EdgeMark's production of these documents do not result in a subject matter waiver of the documents in issue.

Defendants claim that the withheld documents "involve Warner Norcross & Judd's investigation of existing EdgeMark stock options and its legal advice concerning the tax and securities law implications of converting stock options in the merger." (Defs.' Resp., at 4). Although the descriptions contained in the privilege log hardly contain this kind of detail, this Court does take into account here that Defendants have at least attempted in their brief to describe in more detail the nature and content of these documents. And unlike the previous documents ordered produced, most of these documents were authored by or sent to an attorney. Therefore, those documents must be made available for an *in camera* inspection.

 However, some of the documents were only copied to an attorney, but were not authored by an attorney. Document 1703–1708 is a "communication regarding Edge-Mark/Bruning Nonstatutory Stock Options" authored by Kate Clancy and Steve Butler of Old Kent Bank, and sent to Julie Shaw of Old Kent Bank and Gordon Lewis, a WNJ attorney. Nothing in this description even hints that this communication relates to the providing of legal advice, and therefore this document must be produced. Documents 1711–1713 and 1714–1716 are similar communications, but they further contain handwritten notes from Attorney Gordon to Julie Shaw of Old Kent Bank. These documents must be produced, however Mr. Gordon's handwritten notes may be redacted.

In summary, Documents #1669–1678, 1703–1708, 4025–4026, and 4276 must be produced. Documents #1711–1713, 1714–1716 must be produced, however Mr. Gordon's handwritten comments may be redacted. All other documents must be made available for an *in camera* inspection.

## V. *Plaintiff's Motion To Compel Defendants To Produce Documents Relating To The Beale Settlement and For Reconsideration of This Court's Ruling On the Motion To Quash The Subpoena To Attorney Gravelyn*

Plaintiff seeks to compel the production of documents relating to the Beale settlement on the grounds that they fall within the crime-fraud exception to the attorney-client and work-product privileges. Plaintiff also seeks to depose Mr. Gravelyn, an attorney who has been disqualified from further rep-

resenting Defendants in this litigation, on privileged matters pertaining to the Beale settlement. Previously, this Court allowed the deposition of Mr. Gravelyn to be taken, but subject to Mr. Gravelyn's raising the attorney-client privilege as necessary. Plaintiff seeks to disallow Mr. Gravelyn from raising the privilege because Plaintiff argues he waived it by engaging in unethical behavior, behavior which falls within the crime-fraud exception.

 The crime-fraud exception can operate as a waiver of the protections of the attorney-client and work-product privileges where the communications operated to further a crime or fraud. However, the term "crime-fraud" is a bit of a misnomer, as it is clear that many courts have recognized other situations in which the exception might apply. For example, some courts have applied the exception to a lawyer's unprofessional behavior, see *Moody v. IRS*, 654 F.2d 795, 800 (D.C.Cir.1981); *Parrott v. Wilson*, 707 F.2d 1262, 1272 (11th Cir.1983), or unethical behavior, see *Jones v. Ada S. McKinley Community Servs.*, No. 89 C 0319, 1989 WL 152352, at *3 (N.D.Ill. Nov.28, 1989), to an intentional tort, see *Irving Trust Co. v. Gomez*, 100 F.R.D. 273, 277 (S.D.N.Y.1983); *Diamond v. Stratton*, 95 F.R.D. 503, 505 (S.D.N.Y.1982), and even to sanctionable conduct, including under Rule 11, see *Cleveland Hair Clinic, Inc. v. Puig*, 968 F.Supp. 1227, 1241 (N.D.Ill.1996); *In re St. Johnsbury Trucking Co.*, 184 B.R. 446, 456 (Bankr.D.Vt. 1995). As the court in *Moody* explained, the underlying rationale for the crime-fraud exception is that it would be perverse "to allow a lawyer to claim an evidentiary privilege to prevent disclosure of work product generated by those very activities the privilege was meant to prevent." *Moody*, 654 F.2d at 800. However, the same court explained that there are other remedies available against unscrupulous lawyers, and that "disclosure is not the sole available remedy for a breach of a professional duty, and may in fact bear so little relationship to the underlying breach as to be inappropriate as a remedy." *Id.* at 801 n. 23. Thus, the Court must determine the relationship, if any, between the inappropriate conduct and disclosure, and then the appropriateness of the remedy of disclosure.

The Court will conduct an *in camera* inspection to determine whether the documents are probative of the issue of whether Defendants' counsel acted intentionally in negotiating with Mr. Beale's personal attorney and in failing to obtain court approval of the settlement with Mr. Beale. To the extent that they are probative, whether they should be produced must be weighed against the numerous remedies already granted to Plaintiff on its tortious interference claim—*i.e.*, costs, attorneys fees, disqualification of a law firm, and damages.

In summary, Document # 17539 must be produced.[3] The remaining documents identified in Exhibit A of Plaintiff's motion must be made available for an *in camera* inspection.

 Turning now to the question of whether the privilege has been waived as to Mr. Gravelyn's deposition, the danger that the privileged matters into which Plaintiff may explore if allowed to do so may bear so little relation to Mr. Gravelyn's unethical behavior is so manifest that we do not think that the waiving of Mr. Gravelyn's privilege is an appropriate remedy in light of the circumstances of this case. Normally, the deposition of opposing counsel should not be taken unless there is a showing that: (1) the information sought is relevant; (2) no other means for obtaining the relevant information exists; (3) the need for the information outweighs the inherent risks of deposing opposing counsel; and (4) the information sought is not privileged. See *M & R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305–06 (N.D.Ill.1992); *Harriston v. Chicago Tribune Co.*, 134 F.R.D. 232, 233 (N.D.Ill.1990). The deposing of opposing counsel provides a unique opportunity for harassment because it disrupts the opposing counsel's preparation for trial, and it may lead to the disqualification of opposing counsel if called as a trial witness. See *id.* In addition, the Federal Rules vest this Court with the discretion to limit pretrial discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(1).

---

3. Defendants concede inadvertently withholding this document. (Defs.' Resp., at 3 n. 2).

While mindful that Attorney Gravelyn is a *former* opposing counsel, the threshold-showing rule and Federal Rule 26(b)(1) illustrate that if the information can be had by some other less intrusive method, then the deposition should be authorized only as a last resort, not in the first instance. This Court finds that those same principles apply with equal force to the present case, where the attorney sought to be deposed was disqualified for unethical behavior while formerly representing a party to this case.

Therefore, the documents sought to be produced, and which this Court has ordered be made available *in camera*, may contain the information Plaintiff needs. Plaintiff has not made a proper showing that the taking of Mr. Gravelyn's deposition would not be duplicative of information that may be obtained from the documents Plaintiff seeks concerning the settlement agreement. Furthermore, this Court is not convinced that the remedy sought here (a finding that the attorney-client privilege is waived as to Mr. Gravelyn's deposition), is meaningfully related to the unethical behavior, particularly in light of the remedies already awarded for Mr. Gravelyn's behavior.

For these reasons, the motion for reconsideration is denied. Mr. Gravelyn's deposition may proceed, but Mr. Gravelyn may claim the privilege, if necessary. If Plaintiff believes that Mr. Gravelyn has information which would not be duplicative of information already produced or of information that can be obtained in a less disruptive, less burdensome way, he may seek to persuade this Court that obtaining that information from Mr. Gravelyn would not be duplicative. However, for the time being, allowing Plaintiff free reign to take Mr. Gravelyn's deposition and probe into any issue, including those protected by the attorney-client privilege or the work-product doctrine, whether related to his misconduct or not, is premature at best and potentially duplicative of information Plaintiff seeks from the documents which have been ordered to be made available *in camera*.

### VI. *Conclusion*

For the foregoing reasons, the following motions are granted-in-part and denied-in-part insofar as this Court has ordered various withheld documents to be made available for an *in camera* inspection: (1) Motion to Compel Production of Documents Transmitted to David Olson of Donaldson, Lufkin & Jenrette [311–1]; (2) Motion to Compel Production of Documents for Which Defendants Have Failed to Establish the Attorney-Client Privilege [310–1]; (3) Motion to Compel Production of Documents Relating to Treatment of EdgeMark Option Holders [309–1]; and (4) Motion to Compel Defendants to Produce Documents Relating to the Beale Settlement [312–1]. Plaintiff's Motion For Reconsideration of This Court's Ruling on the Motion to Quash the Subpoena to Attorney Gravelyn [312–2] is denied. Defendants must submit the documents identified in this opinion for an *in camera* inspection within seven (7) business days after entry of this order.