**BASF AKTIENGESELLSCHAFT,**
Plaintiff,

v.

**REILLY INDUSTRIES, INC., Defendant.**

No. IPO1–1936–C–Y/K.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 29, 2004.

Frederick D. Emhardt, Plews Shadley Racher & Braun, Indianapolis, IN, Paul M. Richter, Kenyon & Kenyon, New York City, for plaintiff.

John C. McNett, Woodard Emhardt Moriarty McNutt & Henry LLP, Indianapolis, IN, for defendant.

## *ORDER ON PLAINTIFF'S MOTION TO COMPEL* [1]

BAKER, United States Magistrate Judge.

### I. Background.

The work product privilege and the attorney-client privilege may both be waived by disclosures to third parties. As this case points out, however, the standard applied in determining waiver varies depending on which privilege is asserted. The distinction is crucial, and ultimately dooms the pending motion to compel at issue here.

Plaintiff BASF Aktiengesellschaft ("BASF") filed a motion to compel seeking two specific categories of documents and/or information: (1) a single communication between Defendant Reilly Industries, Inc. ("Reilly") and The Procter and Gamble Co. ("Procter"); and (2) the identity of—and documents and communications with—the individual described as the "Ohio expert" in Reilly's privilege log. According to BASF, it is entitled to the requested information because the privileges Reilly proffers to protect the information are either inapplicable or have been waived through Reilly's advice-of-counsel defense. Reilly claims that the communication with Procter is protected by the work product doctrine and the common interest doctrine. As for the Ohio expert, Reilly maintains that disclosure is unwarranted because the individual is a non-testifying expert that Reilly hired "to help it evaluate invalidity issues involving the Witman patent." [Docket No. 152, p. 2]. In other words, Reilly seeks to distinguish between patent infringement—as alleged by BASF—and patent invalidity—as alleged by Reilly. For the reasons discussed below, BASF's motion is denied.

### II. Discussion.

### A. The Procter Communication.

On May 1, 2003, Reilly employee Linda Hicks wrote a letter to Procter employee Ray Young "explaining BASF's suit against Reilly and the possibility that P & G might provide records to support Reilly's defense." [2] [Docket No. 148, Ex. 3, p. 23]. Neither Hicks nor Young is an attorney. "Based on this disclosure, BASF determined that the work product doctrine does not protect [the letter]" and, therefore, requested its production. [Docket No. 146, p. 5]. BASF's argument with respect to Reilly's claimed privileges is twofold. First, with respect to Reilly's claim that the letter is protected by the common interest doctrine, BASF asserts that because the relationship between Reilly and Procter is solely commercial, i.e. they do not share identical legal interests, the privilege is inapplicable. Likewise, BASF contends that Reilly's claim of work product protection is equally unavailable because, assuming the privilege attaches to the letter, Reilly waived protection by disclosing the letter to Procter, a third party.

Despite the parties' assertions to the contrary, "[t]he common interest doctrine is not an independent source of confidentiality. Rather, it simply extends the protection afforded by other doctrines, such as the attorney/client privilege and the work product rule." *McNally Tunneling Corp. v. City of Evanston*, 2001 WL 1246630, at *2 (N.D.Ill. 2001) (citations omitted). Accordingly, the Court first decides whether the work product doctrine applies to the Procter communication before determining whether Reilly waived the privilege by disclosing the letter to Procter.

### 1. Work Product Doctrine.

"The work-product doctrine, like the attorney-client privilege, provides an exception to the otherwise liberal discovery rules." *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 215 (N.D.Ill.2001). It is distinct from and broader than the attorney-client privilege. *Smithkline Beecham Corp. v. Apotex Corp.*, 193

---

1. The parties filed their briefs regarding the underlying motion to compel under seal. However, the Court does not believe that any of the information set forth in this order, or the conclusions reached in this order, may properly be deemed confidential and filed under seal. Accordingly, this order shall be filed by the Clerk without any restrictions on its dissemination.

2. Procter is a customer of Reilly that utilizes Reilly's accused PVNO–3 process.

F.R.D. 530, 539 (N.D.Ill.2000), *citing U.S. v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). The work product doctrine developed "to protect the work of an attorney from encroachment by opposing counsel." *White v. Kenneth Warren & Son, Ltd.,* 203 F.R.D. 369, 373 (N.D.Ill.2001). To claim protection of the doctrine, a party must demonstrate that the materials in question were prepared in anticipation of litigation. *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 (7th Cir.1996). The burden is on the discovery opponent to establish that the work product doctrine immunizes the documents at issue from discovery. *Allen v. Chicago Transit Authority,* 198 F.R.D. 495, 499 (N.D.Ill.2001), citing *U.S. v. Hamilton,* 19 F.3d 350, 354 (7th Cir.1994).

■ The threshold determination is "whether the documents sought to be protected were prepared in anticipation of litigation or for trial." *Caremark, Inc. v. Affiliated Computer Services, Inc.,* 195 F.R.D. 610, 614 (N.D.Ill.2000), citing *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege is not absolute. It can be rebutted "if the party seeking production demonstrates both a substantial need for the materials and that it would suffer undue hardship in procuring the requested information some other way." *Logan,* 96 F.3d at 976. In the instant matter, BASF does not attempt to rebut the privilege. Instead, it argues that the work product doctrine is either inapplicable, or that Reilly waived its protections.

■ In arguing that the privilege does not apply, BASF emphasizes that Hicks, a non-attorney, drafted the document in question. However, the fact that Hicks is not an attorney is not dispositive of this matter. As the Supreme Court long ago noted:

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*U.S. v. Nobles,* 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Accordingly, materials drafted or prepared by non-attorneys can, under certain circumstances, be protected by the work product doctrine.

■ In the instant matter, Reilly asserts that "[t]he P & G communication was prepared under the direction of Reilly's counsel" and "sought information from P & G to help Reilly's counsel prepare its defense of Reilly." [Docket No. 152, p. 3]. Thus, there is no question that the letter was prepared by a representative of Reilly in anticipation of litigation. Accordingly, the letter falls within the scope of the work product privilege. *See* Fed.R.Civ.P. 26(b)(3) (protecting documents "prepared in anticipation of litigation or for trial by or for ... [a] party or by or for that ... party's representative (including the ... party's attorney, consultant, surety, indemnitor, insurer, or agent)").

## 2. Waiver.

■ "Both the attorney-client and work-product privileges may be waived. Perhaps the most common instance of waiver is where an otherwise privileged communication is disclosed to a third party outside the scope of the privilege." *Beneficial,* 205 F.R.D. at 215. However, "disclosure of a document to third persons does not waive the work-product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information." 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure § 2024 (2d ed.1994). *See also Vardon Golf Co., Inc. v. Karsten Mfg. Corp.,* 213 F.R.D. 528, 534 (N.D.Ill.2003) (waiver occurs when work product is disclosed in a manner which substantially increases the opportunity for potential adversaries to obtain the information); *Tronitech, Inc. v. NCR Corp.,* 108 F.R.D. 655, 657 (S.D.Ind.1985) ("The work product doctrine ... is intended only to prevent disclosure to the opposing counsel and his client, so it is not ordinarily

waived by disclosure to third parties."). Moreover, as noted above, the common interest doctrine extends the work product doctrine to those situations where parties share a " 'common interest' in current or potential litigation, either as actual or potential plaintiffs or defendants." *Beneficial,* 205 F.R.D. at 216. To maintain the privilege, the common interest must be a legal interest, not merely a business or financial interest. *Blanchard v. EdgeMark Financial Corp.,* 192 F.R.D. 233, 237 (N.D.Ill.2000). Accordingly, waiver would not occur if disclosure of otherwise protected work product was made to a third party with a common legal interest *or* would not otherwise substantially increase the ability of an adversary to gain the information.

In its initial brief, BASF focused solely on the common interest doctrine for its claim that the Procter letter should be produced. In doing so, BASF noted that Reilly's privilege log indicated that the work product doctrine was the reason for non-disclosure. However, after serving its privilege log, correspondence from Reilly maintained that the common interest doctrine applied. In reply, BASF states:

> Preliminarily, it is worth noting that during the exchange of correspondence prior to the filing of the present motion, Reilly did not mention that it was maintaining its position that the P & G communication was protected from discovery under the work product doctrine. Instead, Reilly asserted the common interest privilege. Now, in its Opposition, Reilly claims that the P & G communication is work product because the letter from Ms. Hicks to Mr. Young at P & G was prepared under the direction of counsel and in preparation for litigation. Reilly's resurrected attempt to assert the work product doctrine should be denied.

[Docket No. 155, p. 6]. The Court disagrees. First and foremost, BASF knew when it received service of Reilly's privilege log that Reilly maintained that the letter was protected by the work product doctrine. Moreover as noted above, "[t]he common interest doctrine is not an independent source of confidentiality. Rather, it simply extends the protection afforded by other doctrines, such

as the attorney/client privilege and the work product rule." *McNally Tunneling Corp.,* 2001 WL 1246630, at *2 (citations omitted).

Finally, the "exchange of correspondence" on which BASF relies for its contention that Reilly somehow abandoned its claim of work product protection states:

> In other correspondence, you have raised a question as to our work product privilege in connection with certain communications with P & G. Those documents are directed to invalidity issues pertaining to BASF's patent, not at all to non-infringement issues, and they are protected by the common interest doctrine. As you know, P & G is a customer of Reilly for the very process that BASF seeks to enjoin.

[Docket No. 148, Ex. 7, p. 3]. Nothing in this correspondence indicates that Reilly was discarding its work product claim. Even if Reilly had changed its tune while the parties were attempting to resolve their dispute prior to Court intervention, BASF provides no authority and makes no argument how Reilly's alleged shift in position is binding on Reilly with respect to BASF's motion to compel.

■ BASF fares no better in its contention that Reilly waived its otherwise valid work product protection. According to BASF, the mere fact that Reilly voluntarily disclosed the communication to Procter "increased BASF's chances of obtaining the information." [Docket No. 155, p. 6]. However, this is not the standard against which waiver is decided. It is not whether disclosure "increases" the chances of an adversary gaining the information, for any disclosure to a third party could increase such chances. Instead, the question is whether the disclosure " 'substantially increases* the opportunity for potential adversaries to obtain the information.' " *Vardon Golf Co., Inc. v. Karsten Mfg. Corp.,* 213 F.R.D. 528, 534 (N.D.Ill. 2003) (emphasis added) (citations omitted). Moreover, "[t]he focus is not whether the disclosure is voluntary, but whether the information is disclosed to an adversary." *Id.*

The distinction is explained by the underlying purpose of the work product doctrine as compared with that of the attorney-client privilege. "The purpose of the [attorney-

client] privilege is to encourage full disclosure and to facilitate open communication between attorneys and their clients." *U.S. v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003). Thus, the privilege "has its basis in the confidential nature of the communication and the reason for the privilege ordinarily ceases to exist if confidentiality is destroyed by voluntary disclosure to a third person." 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure § 2024 (2d ed.1994). In contrast, "the purpose of the work-product rule 'is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials.' " *Id.* (citation omitted). *See also Peralta v. Cendant Corp.*, 190 F.R.D. 38, 42 (D.Conn.1999) (same); *Anderson v. Torrington Co.*, 120 F.R.D. 82, 87 (N.D.Ind.1987) (same). Thus, only those disclosures that substantially increase the potential for an adversary to obtain the disclosed information implicates a waiver of the work product protection. Here, this is not the case.

As noted above, Procter is a customer of Reilly's accused PVNO–3 process. Thus, Procter's interest runs parallel to that of Reilly's and disclosure of the letter to Procter does not substantially increase BASF's opportunity to obtain the information. *Cf. Behnia v. Shapiro*, 176 F.R.D. 277, 280 (N.D.Ill.1997) (court found waiver of the work product privilege when document disclosed to "simply a fact witness" with no indication that document would be kept confidential). Moreover, according to Reilly,

there is an agreement with Procter requiring confidential information shared by Reilly with Procter to be kept confidential. [Docket No. 152, p. 5; Pl.'s Ex. 13, Frye Dep. Corrections, p. 3].[3] Such an agreement "militates against a finding of waiver." *Blanchard v. EdgeMark Financial Corp.*, 192 F.R.D. 233, 237 (N.D.Ill.2000) ("The confidentiality agreement is evidence that [the defendant] took steps to ensure that its work product did not land in the hands of its adversaries."). Therefore the Court finds that Reilly did not waive the work product doctrine by disclosing the letter to Procter.[4]

### B. The Ohio Expert.

■ In its motion, BASF also seeks to compel Reilly to produce the identity of, and documents associated with, an individual disclosed as "the Ohio expert" in Reilly's privilege log. Although Reilly retained the Ohio expert as a non-testifying expert witness, BASF argues that it is nonetheless entitled to information regarding the Ohio expert because Reilly waived what would otherwise have been protected by the work product doctrine. In support of its position, BASF points to the Court's September 19, 2003 order holding that Reilly waived work product doctrine relating to the subject matter of the opinion letter to the extent communicated to Reilly.

According to Reilly, it "engaged the Ohio expert to help Reilly's counsel prepare its invalidity defense. The Ohio expert's work had nothing to do with infringement issues." [Docket No. 152, p. 6]. As described by the parties briefs, the Ohio expert performed

---

3. BASF makes much of the seemingly contradictory statements in the deposition and errata sheet of Anne Frye, Reilly's general counsel. In her deposition, Frye testified that no joint defense agreement existed between Reilly and Procter, that Procter had not agreed to help defend Reilly, and that there was no "agreement to work together in connection with the lawsuit." [Pl.'s Ex. 11, pp. 114–15]. Subsequently, in her errata sheet, Frye added that Procter and Reilly had a written confidentiality agreement "to maintain Reilly's confidential information shared with Procter & Gamble as confidential." [Pl.'s Ex. 13, Frye Dep. Corrections, p. 3]. In addition, Frye added that Procter "has offered its help in Reilly's defense of this litigation, which they have provided at least in connection with a validity

issue the nature of which is privileged, but is subject to a currently pending BASF motion to compel." [*Id.*]. Frye's additions, while not wholly contradictory, are somewhat troubling, and should have been provided at Frye's deposition. However, BASF has not moved to strike Frye's corrections, and the Court does not believe such measures to be appropriate.

4. Because the Court finds that Reilly's letter to Procter did not substantially increase the opportunities for BASF to obtain the disclosed information and, therefore, work product protection was not waived, the Court need not determine whether the common interest doctrine applies.

work relating to the Witman patent. Specifically, the Ohio expert performed measurements of the pH in Example V of the Witman patent. Reilly maintains that the Ohio expert's work pertains solely to its invalidity defense and not the subject matter of the advice-of-counsel opinion, i.e. infringement. However, according to BASF, "whether the reaction mixture of Reilly's accused PVNO process has an acid pH is a central infringement issue in this case, raised by Reilly from the very beginning of the case." [Docket No. 146, p. 9]. BASF is correct. Whether an acid is present in the oxidation reaction mixture during the Reilly's PVNO–3 process is a central unresolved issue in this case. [Docket No. 169, p. 32]. However, the Ohio expert did not measure the acidity of Reilly's PVNO–3 process. The expert measured Example 5 of the Witman patent. Moreover, "[t]he Ohio expert was simply never given confidential information about Reilly's secret process for making PVNO and has never learned any details of the process. The Ohio expert ... has not ... provide[d] any opinions on non-infringement or infringement." [Docket No. 152, p. 8]. In short, Reilly has not waived the work product doctrine as it relates to Reilly's communication with the Ohio expert because those communications do not fall within the subject matter of the advice-of-counsel letter as contemplated by this Court's previous order.[5]

## III. Conclusion.

For the reasons set forth above, BASF's motion to compel is denied.

---

**5.** That "Reilly tried to duplicate the technique used by the 'Ohio expert' and purportedly used the same instrument to measure [the] pH of its PVNO process," [Docket No. 146, pp. 10–11] does not change this conclusion. According to Reilly, it has "already disclosed to BASF all relevant information pertaining to the pH probe and Reilly's ill-fated effort to measure pH with it." [Docket No. 152, p. 10]. In its reply, BASF does not challenge Reilly's claims that it has disclosed information relating to the pH probe. BASF is not entitled to more.